John M. Rine, Appellant, *v.* J. B. Hall, with notice to Uriah Shuman, Administrator of Lavina S. Hall, deceased, and Uriah Shuman, Garnishee.

*Evidence—Competency of witness—Party dead—Husband and wife—Act of May 23, 1887, sec. 5, clause e.*

A widower is a competent witness to testify that he was indebted to his wife's estate; that a judgment which he had confessed to his wife's administrator was for that indebtedness, and that it was fair and honest. The only interest which will disqualify a witness, under the Act of May 23, 1887, P. L. 158, sec. 5, clause *e*, is an interest adverse to the right of the decedent.

*Contract—Husband and wife—Working wife's farm on shares.*

There is no fraud or illegality in a contract between a husband and wife by which the husband undertakes to work his wife's farm on shares, and, as tenant, to account to her, as owner, for one half of the crops raised on the land.

*Husband and wife—Contract—Evidence.*

The rule which requires proof in support of a wife's claim to be clear, convincing and indubitable applies to cases in which the title to specific property claimed is involved in doubt. When indebtedness only is alleged, it is sufficient if the proof be clear and satisfactory.

Where a husband lives upon the real estate of his wife, or by her consent takes the income of her estate, and she makes no demand upon him for an account, and the money is spent in support of the family, the law presumes a gift of the income to the husband, and no liability on his part to account for it arises; but where the husband contracts with his wife to pay her the income or a part of it he becomes her debtor to that extent.

A husband confessed judgment to his wife's administrator. In a proceeding by the husband's creditors attacking the validity of the judgment, the husband testified that he had made a contract with his wife by which he was to work her farm on shares and account to her for one half of the proceeds. He stated that he had never accounted to his wife or paid to her any of the proceeds of the farm. He testified as to the annual quantity of the crops produced, the average price for different years as shown by the books of the dealer who had bought them, and, adopting as the standard value of each crop a price several cents a bushel less than the average, fixed the values thus determined as the measure of his liability. He was supported in his testimony by a number of farmers of the vicinity. After deducting his wife's share of the taxes, the costs of repairs and certain other costs, he, together with his counsel, ascertained a balance due, and for that amount the judgment was given without the administrator in any way participating in the matter. The husband testified that he did not keep a regular account of the farm products, and that such a partial and

incomplete account as he did keep was lost. The heirs of the wife directed that the money realized on the judgment by the administrator should be paid out to the creditors of the husband, among whom was the administrator himself. *Held,* (1) that the husband was a competent witness; (2) that the evidence of the husband as to the amount due under the contract was for the jury; (3) that it was not error for the court to refuse to strike out the husband's testimony because he stated that he had kept no regular accounts; (4) that the heirs of the wife had a right to direct that the money realized from the judgment should be paid to the husband's creditors; (5) that, as the money which the administrator had applied to the payment of his personal debt had been so applied by the direction of the wife's heirs, he was entitled to retain it; (6) that when the judgment note was handed to the administrator there was no presumption of its invalidity attaching to it; (7) that on the whole case the question of the existence of the contract and the fairness of the amount of the judgment was for the jury, and a verdict in favor of the validity of the judgment should be sustained.

Argued May 23, 1898. Appeal, No. 364, Jan. T., 1898, by plaintiff, from judgment of C. P. Juniata Co., Sept. T., 1896, No. 90, on verdict for defendant. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Attachment execution. Before LYONS, J.

The issue was between the plaintiff and the garnishee under a plea of nulla bona and the garnishee is the defendant in this issue.

At the trial it appeared that the plaintiff having a judgment, No. 250, May term, 1895, against J. B. Hall, issued an attachment execution and summoned as garnishee Uriah Shuman, administrator of Lavina S. Hall, the deceased wife of J. B. Hall, and Uriah Shuman. Mrs. Hall died on March 26, 1895, and on April 26, 1895, Hall confessed judgment to her administrator for the sum of $7,534, under which his land was sold.

At the trial defendant offered deed from Andrew Shuman to Lavina S. Hall, dated August 19, 1884, for 168 acres and 148 perches in consideration of $10.00 and natural love and affection.

Hall testified that he had made a contract with his wife under which he was liable for the amount for which the judgment was confessed. While he was on the stand the defendant offered to prove by him that this conveyance was a gift by Andrew Shuman to Lavina S. Hall, his daughter. This, in connection with the deed, to show title in Mrs. Hall.

Plaintiff objected, first, because the deed must speak for itself; second, because Mr. Hall is not a competent witness to prove it, his wife being dead.

By the Court: Objection overruled, evidence admitted and bill sealed. [1]

He was then asked: " Q. After that deed was made to your wife, state whether or not you entered into an agreement with her, with reference to farming the land mentioned in that deed? "

Plaintiff objected for the same reasons previously given.

By the Court: Objection overruled, evidence admitted and bill sealed. [2]

Defendant offered to prove by this witness that, after his wife, Lavina S. Hall, obtained title to the land mentioned in the deed already in evidence, he entered into an agreement with his wife which provided that he was to farm this land and to account to her for one half of the income therefrom. To be followed with proof that he farmed this land for a period of ten years, from 1884 to 1895, that he received all the crops from the same, appropriated them to his own use, and did not account to his wife for the same, pursuant to said contract; to be followed with further proof that the consideration of the $7,534 judgment was the amount which he owed his wife pursuant to that contract.

Plaintiff objected because it is not such evidence as is required to show clearly and satisfactorily the honesty and fairness of the judgment in dispute; that the mere guess of the witness in the manner in which it is proposed to be proved is not such evidence as is required by the law to establish the bona fides of that judgment: It is irrelevant to the issue trying.

By the Court: Objection overruled, evidence admitted and bill sealed. [3]

The witness testified: " Q. That is the only way that you can make up the consideration of this judgment? A. Yes, sir. Q. Where is your account that you kept of the crops you raised? A. I said that I estimated it. Q. I am not asking you that. Where is your account that you kept of the crops that you raised there? A. I have no regular account. Q. Have you any sort of an account at all? A. Yes, sir; I have some account at home, not here."

Plaintiff objected because he does not produce the account

which he says he has at home, which is the best evidence of what is raised on the farm, and asks that the testimony be stricken out.

By the Court: The objection to this testimony is overruled, and evidence admitted, the request to strike out is refused and bill sealed. [4]

Defendant offered to prove by this witness that the farm of Lavina S. Hall had an average yield of wheat per year, from 1884 to 1895, of 800 bushels, corn 1,250 bushels, oats 500 bushels, and that the yield was even greater than this; this in connection with the testimony of Mr. Hall, to show the valid consideration of the single bill.

Plaintiff objected because it is not that clear and satisfactory testimony that he is bound to show in the honesty of the judgment. Any guess as to what the farm will produce ordinarily is not such evidence as the law requires.

By the Court: We think that the defendant may, in connection with the evidence already given, offer this evidence. It is therefore overruled, evidence admitted and bill sealed. [5]

Defendant offered to testify that he received none of the proceeds of the personal property or real estate realized on the fieri facias issued on the judgment of Uriah Shuman, administrator of Lavina S. Hall, deceased, v. J. B. Hall, but the money realized on such execution was received by his attorney, who issued the writs for him, and his attorney paid the money to Hall's creditors in the summer of 1895, and that he never received any portion of it himself, as administrator of Mrs. Hall, and that he had no funds or property of J. B. Hall when this attachment execution was served upon him; this for the purpose of sustaining the plea of nulla bona.

Plaintiff objected because, first, it contradicts the record; second, he cannot excuse himself from liability by saying that he let his attorney, Charles P. Ulrich, get this money from the sheriff for him; third, he cannot excuse himself by allowing his attorney to pay this money to creditors of J. B. Hall who were not contesting the validity of the judgment; fourth, it is irrelevant; fifth, if the judgment is honest, it is immaterial, because it makes no difference then where the money is; if the judgment is collusive and fraudulent, he had no right to pay it out to any of those creditors excepting contesting creditors.

By the Court: Objections overruled, evidence admitted and bill sealed. [6]

Defendant offered to testify that Jeremiah B. Hall is personally indebted to him in the sum of about $1,400, being a note upon which the defendant was indorser in the First National Bank of Mifflingtown, and which he was compelled to pay, and which was not paid to him by Mr. Hall; this for the purpose of showing an indebtedness of Hall to defendant.

Plaintiff objected first, because, this money arising from the sale of the property of J. B. Hall cannot be applied by the administrator to the payment of the individual debts of J. B. Hall to him; second, so far as this case is concerned it is immaterial, because if the judgment is valid, no matter where, as far as this case is concerned, Shuman applied the money; if the judgment is fraudulent and void he has no right to apply it to claims against J. B. Hall that are not contesting the validity of this judgment; third, it is irrelevant and immaterial.

The Court: As the issue stands on the plea of nulla bona, it is incumbent to show that there is money in his hands and that there is no other indebtedness.

Mr. Hower of counsel for plaintiff: That is what we claim.

The Court: I did not understand why you summoned him in the dual capacity.

Mr. Hower: I did not know what might turn up. We don't claim that he has money in his hands as a personal garnishee, but that he has money in his hands as administrator of Lavina S. Hall, deceased.

By the Court: Objections overruled, evidence admitted and bill sealed. [7]

The court admitted under objection and exception the record of the judgments confessed by Hall to the administrator. [8]

Defendant offered to prove by G. W. Hall, a son of J. B. and Lavina S. Hall, that the heirs of Lavina S. Hall, deceased, met and determined to instruct the administrator to apply the money realized out of the judgment which the administrator held against Mr. Hall to Mr. Hall's debts, and that this determination was communicated to defendant, in consequence of which that money was paid out, not to defendant, but to the creditors of Mr. Hall, by Mr. Ulrich. This for the purpose of showing that none of the money ever entered into the hands

of defendant, and it was applied by his attorney according to the instructions, or as directed by the heirs of Mrs. Hall, who were the owners of the fund.

Plaintiff objected because if the judgment in dispute is collusive, they could not give any directions to Mr. Shuman to appropriate this money to any of the judgments or claims against J. B. Hall ; if the judgment is not collusive, but a genuine and honest judgment, then it makes no difference where this money went to, so far as this creditor is concerned ; therefore irrelevant.

By the Court: Objections overruled, evidence admitted and bill sealed. [9]

Defendant offered to prove by C. P. Ulrich that he made a calculation of the amount of money that was due Uriah Shuman as administrator of Lavina S. Hall ; that he based this calculation upon the productive value of the farm from the years 1884 to 1895 ; that the agreement was made in good faith and a judgment note was afterward executed by Mr. Hall upon the basis of this calculation, and to show that there was no collusion.

Plaintiff objected because the witness has already stated that that it was based upon data given him by J. B. Hall and not from what he knew of the crops, and this is not such evidence, so clear, satisfactory and necessary, as is required by the law to show the honesty and bona fides of this judgment.

By the Court: We think it is evidence for the purpose offered, and it would also be evidence to show that there was no collusion by the administrator in the confession of the judgment. To which the plaintiff excepts and bill sealed. [10]

Plaintiff offered to prove by John L. Weiser that J. B. Hall sold him grain and he also purchased his flour from him for the family since 1884. This for the purpose of showing that he furnished materials for the family and paid for them, and for the purpose of further showing that if Mrs. Hall and J. B. Hall had the contract, as alleged, that she was willing to give J. B. Hall her share for the purpose of maintaining the family.

Defendant objected because the offer does not indicate anything that shows a willingness on the part of Mrs. Hall to do anything; unless it was done in her presence, or knowledge is traced to her, it would not be evidence, and besides it is immaterial and irrelevant. It has no tendency to shed any light upon the issues that are raised in this attachment execution.

By the Court: We do not think that the evidence is admissible for the purpose offered. The objection is therefore sustained, the evidence rejected and bill sealed. [11]

Plaintiff's points and the answers thereto among others were as follows:

1. If the jury believe from the evidence that J. B. Hall and Lavina S. Hall, his wife, lived together in peace and harmony, and J. B. Hall took and retained the whole of the crop raised on the farm, and the expenses of housekeeping were paid by him for a period of about ten or eleven years immediately preceeding the death of Lavina S. Hall, then there is a presumption that Mrs. Hall made a gift of her share of the crops, if there was an agreement to divide them, to J. B. Hall, her husband, and the judgment No. 250, May term, 1895, is collusive, fraudulent and void. *Answer:* This we refuse and submit it as a question of fact for you to determine whether there was an agreement between J. B. Hall and his wife, that she was to receive the one half of the crops raised upon the farm, or whether there was not. [12]

2. If the jury believe from the evidence that J. B. Hall and Lavina S. Hall, his wife, lived together in peace and harmony and J. B. Hall retained the whole of the crops raised on the farm, and they, the crops, or the proceeds of the crops were used by him to pay the expenses of housekeeping, and pay insurance premiums to have farm buildings insured, and pay the taxes, and pay for making repairs and improvements about the premises, and pay for building and repairing the fences and buildings for a period of ten or eleven years, from about August 19, 1884, to the date of the death of Lavina S. Hall, then there is a presumption that Lavina S. Hall made a gift of her share of the crops raised on the farm, if there was an agreement to divide them, to J. B. Hall, her husband, and if you believe there was such a gift then the judgment in controversy is collusive, fraudulent and void, and the plaintiff is entitled to recover. *Answer:* We refuse to so instruct you. If there was no agreement between them that he was to account to his wife for one half of the crops, then the law would be as stated in this point. So that we submit it as a question of fact for you to determine, whether such agreement existed or not. [13]

4. If the jury believe from the evidence that Uriah Shuman

paid out the money he collected, on the judgment, even if he paid it out before this attachment was issued and served, if the judgment is collusive, fraudulent and void, that will not relieve him from his liability on this attachment. *Answer :* This is refused. [14]

5. If the jury believe from the evidence that judgment No. 250, May term, 1895, is collusive, fraudulent and void as to the creditors of J. B. Hall, yet it is binding and conclusive as between J. B. Hall and Uriah Shuman, and Uriah Shuman had no right to apply any part of the money he made on that collusive judgment to his judgment No. 257, May term, 1895, and that money that he thus appropriated to his judgment must be regarded as in his hands unappropriated, and is liable to this attachment if the judgment No. 250, May term, 1895, is found by the jury to be collusive, fraudulent and void. *Answer :* Refused. [15]

6. Uriah Shuman, administrator of Lavina S. Hall, deceased, wife of J. B. Hall, must satisfy you affirmatively, beyond a reasonable doubt, that the judgment is entered upon a judgment single bill that was given Uriah Shuman, administrator of Lavina S. Hall, deceased, by J. B. Hall, to secure an honest debt due and owing Lavina S. Hall by her said husband from her separate estate, and if Shuman has failed to do that then the plaintiff is entitled to recover. *Answer :* We have instructed you in the general charge that the burden of proof rests upon Uriah Shuman, administrator of Lavina S. Hall, deceased, the defendant, to satisfy you by evidence that is clear and satisfactory that this judgment was an honest one, and that is all that the law requires. [16]

8. If the jury believe from the evidence that neither J. B. Hall nor Lavina S. Hall kept an account of the crops raised on the farm, that is presumptive evidence that Lavina S. Hall made a gift of her share of the crops to her husband if there was an agreement to divide them. *Answer :* This is refused. The mere fact that J. B. Hall failed to keep an account of the crops raised by him would not be sufficient to defeat a recovery by the wife or her legal representatives. It is merely a circumstance for you to consider in connection with the other facts in evidence in the case. [17]

9. If the jury believe from the evidence that neither J. B.

Hall nor Lavina S. Hall kept an account of the crops raised on the farm, that is presumptive evidence that they never had an agreement to divide the crops between them. *Answer :* Refused, and for further answer we refer to the answer to the eighth point. [18]

10. If the jury believe from the evidence that J. B. Hall and his wife never had a bargain to divide the crops by J. B. Hall getting one half the crops for farming the land, as alleged by Uriah Shuman, the garnishee, then the judgment is collusive, fraudulent and void, and the plaintiff is entitled to recover. *Answer :* This we affirm with this qualification : If Uriah Shuman had no knowledge of this fraud then it could not affect him if he paid out the money which he realized on the judgment before he had notice that the judgment was fraudulent. [19]

11. A mere estimate of the crops raised on the farm for ten or eleven years immediately preceding the death of Lavina S. Hall, wife of J. B. Hall, is not such clear and satisfactory evidence as the law requires to show the honesty of the judgment of Uriah Shuman, administrator, against J. B. Hall, as against John M. Rine, a creditor of J. B. Hall, and therefore the plaintiff is entitled to recover. *Answer :* Refused. [20]

12. A mere estimate of the crops raised on the farm for ten or eleven years immediately preceding the death of Lavina S. Hall, wife of J. B. Hall, is not such clear and satisfactory evidence that the law requires to show you a reason for the honesty of the judgment of Uriah Shuman, administrator, against J. B. Hall, as against John M. Rine, the creditor of J. B. Hall, and therefore the plaintiff is entitled to recover. *Answer :* Refused. [21]

13. If the jury believe from the evidence that Uriah Shuman used some of the money he made on the judgment of Uriah Shuman, administrator, against J. B. Hall, to pay some creditors of J. B. Hall, that is some evidence to show that said judgment was collusive, fraudulent and void, and was intended to hinder, delay and defraud John M. Rine and other creditors of J. B. Hall from collecting their claims from him. *Answer :* Refused. [22]

14. That under all the evidence in the case the plaintiff is entitled to recover. *Answer :* This is refused. [23]

Defendant's points and the answers thereto among others were as follows:

3. If Mr. Ulrich paid out this money under directions of Uriah Shuman, who acted upon the request of the heirs of Lavina S. Hall, deceased, and no notice was given him of the intention of John M. Rine to contest judgment No. 250, May term, 1895, this payment discharges Mr. Shuman from all liability to John M. Rine for or on account of the money so paid out. *Answer:* This is affirmed. [24]

4. If J. B. Hall is indebted to Uriah Shuman no recovery can be had against Uriah Shuman until enough money of Hall is left in the hands of Mr. Shuman to pay the said Shuman all the money due to him from said Hall. *Answer:* This we affirm. [25]

6. If John M. Rine had notice of the sheriff's sale of the personal property and the real estate of J. B. ·Hall and had a judgment, single bill, which might have been entered or was entered as a judgment when these sales took place, and did not object to the distribution arising from said sales or give Uriah Shuman notice that his judgment was fraudulent, or that he, Rine, would contest the same, and did not offer to contest the said judgment until July 11, 1896, when the attachment was issued, the said Rine is precluded by his laches from making a contest against said judgment, and the verdict should be for the defendant. *Answer:* We affirm that with this qualification: It would be so unless you find that Uriah Shuman had knowledge of the fraudulent character of the judgment, if you should find it to be fraudulent. [26]

The court charged in part as follows:

[Mr. Ulrich testifies that when the note was handed or in the possession of Mr. Shuman he explained to him that it was given for a good and valid consideration. He further testifies that he did not give him the particulars of the consideration. Was there anything in the circumstances that was calculated to put Mr. Shuman upon inquiry? Even if this was a fraudulent judgment, and we say to you that if in point of fact you do not believe that Mr. Hall owed to his wife's estate the amount of this note, yet if Mr. Shuman had no reason to believe that there was anything wrong about it, that he had no notice of it, and he paid out this money before any notice was served on him

of the fact, then he would be an innocent party, and ought not to pay this money over again.] [27]

[But if you should find both those propositions in favor of the plaintiff and against the defendant you will then further inquire how much J. B. Hall was indebted to Uriah Shuman. He has given in evidence a judgment entered in the court of common pleas of Snyder county, on which he claims there is a balance due him of about $1,600. . . . He further testifies that he paid a note to J. B. Hall on which he was indorser at the First National Bank of Mifflintown for the sum of about $1,400, I believe exactly $1,400, and he would be entitled to set that off, also against any claim or money he realized upon this judgment. So that whatever sum you may find from the evidence in the case that J. B. Hall owed to Uriah Shuman, he would be entitled to have set off against the amount realized by him on this judgment.] [28] . . . .

[The judgment might be very fraudulent and if Shuman did not know it, and had no notice of it, then it could not affect him, if he paid it out before he had notice of the fraud.] [29] . . . .

[If you find that Mr. Shuman had no knowledge that any fraud existed in this judgment, and he paid out the money before the attachment execution was served upon him, and the only proof in the case is that it was all paid out in September, 1895, and this execution was not served upon him until July, 1896, so if he paid out all the money before the attachment was served upon him, then your verdict should be for the defendant. But if you find both these propositions in favor of the plaintiff and against the defendant, then you will allow him a credit for the amount which J. B. Hall was indebted to him against the amount of money which he realized upon the judgment against J. B. Hall, No. 250, May term, 1895. . . . But if the amount of money received on the judgment was no greater than the amount of the debt which J. B. Hall owed Uriah Shuman, then your verdict would be for the defendant.] [30]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–11) rulings on evidence, quoting the bill of exceptions; (12–30) above instructions, quoting them.

*Charles Hower*, with him *George L. Hower*, for appellant.—

J. B. Hall was not a competent witness : Walls v. Walls, 182 Pa. 226 ; Smith's Estate, 8 Pa. C. C. 29 ; Taylor v. Kelly, 80 Pa. 95.

The alleged contract between Hall and his wife, with an estimate or guess of the crops raised in pursuance of said contract, is not such evidence as the law requires to establish the honesty of the judgment in dispute : Hause v. Gilger, 52 Pa. 412 ; Wilson v. Silkman, 97 Pa. 509 ; Benson v. Maxwell, 105 Pa. 277 ; Gamber v. Gamber, 18 Pa. 363 ; Eavenson v. Pownall, 182 Pa. 587.

J. B. Hall must give the contents of his book account of the crops raised as he put them down in his book, and not by simply estimating them : Spalding v. Bank, 9 Pa. 28 ; Graff v. Pittsburg, etc., R. R., 31 Pa. 489 ; Emig v. Diehl, 76 Pa. 359 ; Brown v. Day, 78 Pa. 129 ; Empire Transportation Co. v. Steele, 70 Pa. 188 ; Harned v. Livezey, 1 W. N. C. 226 ; Raab v. Urick, 2 W. N. C. 53 ; Coxe v. Deringer, 1 W. N. C. 397 ; Ins. Co. v. Rosenagle, 1 W. N. C. 419 ; Brown v. Davis, 1 W. N. C. 579.

The judgment of Uriah Shuman, Administrator, etc., v. J. B. Hall, if collusive and fraudulent, is nevertheless binding and conclusive as between the parties to it, and it is also binding upon all other noncontesting creditors of J. B. Hall : Meckley's App., 102 Pa. 536 ; Thompson's App., 57 Pa. 175 ; Schick's App., 49 Pa. 380 ; Shulze's App., 1 Pa. 251 ; Harbaugh v. Butner, 148 Pa. 273 ; Watch Co. v. Bedillion, 131 Pa. 385.

Uriah Shuman cannot set off a debt due him by J. B. Hall in this case : Meckley's App., 102 Pa. 536 ; Thompson's App., 57 Pa. 175 ; Schick's App., 49 Pa. 380.

Mrs. Hall gave her share of the crops raised, if there was a contract to divide them, to her husband to assist in supporting the family : Hauer's Est., 140 Pa. 420 ; McGlinsey's App., 14 S. & R. 64 ; Towers v. Hagner, 3 Wharton, 48 ; Hamill's App., 88 Pa. 363 ; Bardsley's Est., 7 W. N. C. 48 ; Cogley's Est., 13 Phila. 308.

The garnishee must show the honesty of the judgment in dispute "beyond a reasonable doubt :" Bradford's App., 29 Pa. 513 ; Wilson v. Silkman, 97 Pa. 509 ; Hause v. Gilger, 52 Pa. 412 ; Eavenson v. Pownall, 182 Pa. 587 ; Gamber v. Gamber, 18 Pa. 363.

*Charles P. Ulrich* and *Louis E. Atkinson,* for appellees.— Mr. Hall was a competent witness: Strause v. Braunreuter, 4 Pa. Superior Ct. 266; Smith v. Hay, 152 Pa. 383; Dixon v. McGraw, 151 Pa. 100; Brose's Est., 155 Pa. 620; Toomey's Est., 150 Pa. 536; Gerz v. Weber, 151 Pa. 401.

It was evidence under the undisputed facts to show that the consideration of the $7,534 judgment was arrived at by an estimate of the quantity and value of the crops, to be followed with the testimony of competent witnesses, that the estimates made by Hall when the note was given, were low, conservative and honest.

There is absolutely no proof that there was any collusion between Hall and Shuman, administrator, etc., when the said note was executed, for the evidence shows that Shuman was not present either then or when the calculation was made to arrive at the amount of it.

One who with knowledge of the facts treats a transaction as a valid one, waives his right to disaffirm it for fraud; so, delay, after knowledge, will bar the right to relief: Woltjen v. Lauer, 2 Leg. Rec. 194.

A garnishee may make the same defense to the attachment by evidence of set-off or of other equities that he might have made if sued by his original creditor: Roig v. Tim, 103 Pa. 117.

Opinion by Mr. Justice Green, July 21, 1898:

We will consider the assignments of error in the same order as they are discussed in the paper-books.

We think there is no merit in the first and second assignments. They both relate to the competency of J. B. Hall as a witness. The case was tried on the answers of the garnishees, the process being an attachment in execution by Rine against Hall, and the garnishees being Uriah Shuman, Admr., etc., of Lavinia S. Hall, the deceased wife of the defendant, J. B. Hall, and Uriah Shuman, in his own right. The plaintiff claimed that the garnishee, Shuman, was indebted to J. B. Hall, both in his representative and his individual character. All such indebtedness was denied by the answers, and so far as the estate of Mrs. Hall was concerned it was claimed that an indebtedness arose in this way. Over a year before the attachment was issued J. B. Hall confessed a judgment to Shuman as administrator,

etc., of Mrs. Hall for $7,534, on which execution process was issued and considerable property of J. B. Hall, both personal and real, was sold, and the proceeds paid over to Shuman as administrator, etc. The plaintiff claimed that this judgment was fraudulent and collusive, and was given for the purpose of defrauding the plaintiff as a creditor of J. B. Hall. The question at issue, therefore, was the validity of this judgment. Hall was offered as a witness by the garnishees to prove that the judgment was fair and honest and was given to secure the estate of Mrs. Hall for money owing by her husband to her and this constituted the chief subject of contest. The purpose of calling Mr. Hall as a witness was to prove the consideration of the judgment. It was to establish his indebtedness to his wife's estate, and he did so testify. It is apparent at once that he was not adversely interested to the estate of his wife, and therefore is not embraced within the exceptions contained in clause *e* of section 5 of the Act of May 23, 1887, P. L. 158. This question has been before us a number of times and it has always been decided that unless the testimony of the witness was adverse to the estate of the deceased party he was competent. To be incompetent under the statute he must conform to the following requirements of clause *e* of section 5 : " Nor where any party to a thing or contract in action is dead . . . . and his right therein has passed . . . . to a party on the record who represents his interest . . . . shall any surviving party to the thing or contract . . . . whose interest shall be adverse . . . . be a competent witness," etc. The only way in which the estate of Mrs. Hall is interested in the litigation is upon the theory that the judgment confessed by J. B. Hall, her husband, to Shuman, her administrator, was fraudulent and void as against the plaintiff, a creditor of J. B. Hall. There was no relation of contract or otherwise between the plaintiff and Mrs. Hall. There is no surviving party to any thing or contract in the case, except a contract between J. B. Hall and his wife, in consideration of the breach of which by J. B. Hall the judgment in question was confessed. Hence there is nothing to which an alleged incompetency could possibly attach except that contract. As to that contract the interest of the witness is not only not adverse, but absolutely and necessarily favorable. It is upon this testimony only that that contract is established. In Toomey's Ap-

peal, 150 Pa. 535, it was said by the court below and sustained by us that, since the act of 1887, "the only interest which shall disqualify is an interest adverse to the right of the decedent." In Gertz v. Weber, 151 Pa. 396, the very point which is now made for the appellant is decided against him. . The syllabus is : " In a suit against executors a pecuniary interest in the estate will not exclude the testimony of witnesses called to disprove a claim against the estate, their interest not being adverse to the right of the decedent." A suit was brought against the executors of a decedent for boarding and services furnished to the decedent by the plaintiff. Two of the children of the decedent who were legatees under her will were offered as witnesses to disprove the claim. The court below rejected the witnesses as incompetent on the ground of interest, but we reversed the judgment, deciding there was error in this respect. The present chief justice delivering the opinion said : " It is quite clear that the interest of neither of the witnesses in question was adverse to the right of their now deceased mother, Theresa Demarra. On the contrary they were called to prove that the claim in suit against her executors has no just foundation. . . . Their interest was therefore not adverse to the right of their since deceased mother, and there is nothing in any of the provisions of the act that renders them or either of them incompetent to testify to the matters recited in the specifications of error. The act is not susceptible of any other reasonable construction. We are therefore of opinion that the court erred in holding that the witnesses were incompetent." The same ruling was made in Bank v. Henning, 171 Pa. 399, Strause v. Braunreuter, 4 Pa. Superior Ct. 263, and in Dickson v. McGraw, 151 Pa. 98. We apprehend the question is thoroughly well settled and needs no further discussion.

Third, fifth, tenth, sixteenth, eighteenth, twentieth and twenty-first assignments. The matters arising upon these assignments call in question the consideration of the judgment confessed by J. B. Hall to Shuman as administrator of Mrs. Hall. It is somewhat remarkable that the validity of this judgment was tried upon answers to interrogatories filed by the plaintiff in the judgment, upon an attachment in execution issued by another judgment creditor of Hall. It is a purely collateral proceeding, and it is highly questionable whether this can be done

while the judgment against Hall stands entirely unimpeached. But the parties have tried the case and brought it here without any determination of that question, and, as it is not necessary to dispose of it we will pass it by. The validity of the judgment was sought to be impeached by attacking its consideration and attempting to show that it was fraudulent and collusive as against other creditors. It is not too much to say that there was not a particle of proof of actual fraud or collusion between the parties. The plaintiff Shuman had no knowledge of it until after the single bill was executed and delivered. He did not participate either in its preparation, its execution, or in the calculations from which it resulted. In some of the assignments the quality of the testimony is attacked as not being sufficient to sustain such an instrument, and in others the purpose to commit a fraud is sought to be deduced as an invalidating feature. As to the most prominent and leading facts there was no real dispute. For instance, the ownership of the farm by the wife from a source entirely independent of her husband, is altogether undisputed. A large and valuable farm containing upwards of 168 acres was conveyed by a proper deed in fee simple by the father of Mrs. Hall in 1884 to her, and was duly recorded. There was not the slightest question upon this most important subject, and this one circumstance removes the case from the great body of litigations of this character which are usually found in the books of reports. It is claimed for the garnishee that when Mrs. Hall became the owner of the land she made a contract with her husband that he should farm the land upon shares, just as he had been doing while he was tenant of her father, and that he should account to her as owner for one half of the crops raised on the land. As this was a perfectly legitimate and proper contract in every point of view to be made between parties situated as they were, there can be no pretense of fraud or illegality of any kind, growing simply out of the making of such a contract. Now the evidence establishing this contract came almost exclusively from the husband. As he was a competent witness to prove it, the chief, indeed the only, question upon that branch of the case was whether his testimony was to be believed by the jury. That question was very carefully and correctly left to the jury by the learned trial judge with all proper cautions and restrictions,

and the jury has found by their verdict that the contract was made as was testified by the husband. That ends the controversy on that subject. We are entirely satisfied with the correctness of this finding and do not see how it could have been otherwise. The testimony of the husband was direct, positive, circumstantial and complete. It did not lack in any element of certainty required in the making of such a contract, and this also removes the case from the application of many decided cases, where there is more or less doubt in regard either to the ownership of the property or the making of the contract which is in question in the given case. There remained nothing but the inquiry whether the husband had fulfilled his contract, and if not what was the amount due the wife for the breach. As the husband, who was himself the debtor, in the most positive and definite manner testified that he had never accounted to his wife or paid her any of the proceeds of the farm there was no lack of certainty on this subject. It was merely a question of his credibility with the jury, and they did believe him as they had a right to do. If they believed him there was no doubt as to the fact of his indebtedness to her. The ascertainment of the amount was the last subject of inquiry. Hall testified with much detail how this was done. He stated the annual quantity of the different crops produced, and the value of the several grains averaged by the prices of the different years, taken from the books of a dealer who had sold them all during each year, and then adopting as the standard value of each, a price several cents a bushel less than the average, fixed the values thus determined as the measure of his liability. He fortified his testimony by the evidence of a number of farmers living in the vicinity and acquainted with the farm. After deducting his wife's share of the taxes, the cost of repairs and the cost of a new barn which he built and paid for, and some other matters of expense he, together with his counsel, ascertained a balance due, and for that amount the judgment was given. The fairness, the propriety and the correctness of this mode of determining the amount due was exclusively for the jury. They were properly instructed upon the whole subject, and after reading the testimony carefully we see no reason to question the correctness of their conclusion. The keeping of an account during the period of the tenancy was not essential

to the validity of the claim.   Of course they did not anticipate that there was ever to be a lawsuit between them about these matters, and as they were husband and wife, neither insisted upon an account.   We do not think the omission to keep such an account was the least evidence of fraud or collusion even between them, and much less so between the husband and her administrator.   The court instructed the jury that the evidence in support of the judgment must be clear and satisfactory.   This is in accordance with the authorities.   In Benson v. Maxwell, 105 Pa. 274, we said: "If the validity of the debt from the husband to the wife be questioned by the creditor of the former it should be proved satisfactorily by clear evidence. . . . . When a wife claims to hold property against the creditors of her husband the burden of proof is on her to show affirmatively by clear and satisfactory evidence that she did not acquire it from him.   When a husband is honestly indebted to his wife, and to other persons he may lawfully confess a judgment in her favor, the effect of which will be to secure her in preference to his other creditors."   The rule which requires proof in support of a wife's claim of title to be such as to be clear, convincing and indubitable applies to cases in which specific property is claimed where the title is involved in doubt. It is not applicable to cases in which indebtedness only is claimed. There the proof must be clear and satisfactory.   We are satisfied that the evidence in the present case came quite up to the standard.   There was no doubt about the title of the wife to the land in question and this title carried with it the right to the proceeds.   These assignments of error are not sustained.

The fourth assignment is without merit.   Mr. Hall did not testify that he kept a regular account of the farm products. Such a partial and incomplete account as he did keep he lost and was unable to find.   This was no reason for striking out his testimony.

Sixth, ninth and fourteenth assignments.   It was proved and not contradicted that the heirs of Mrs. Hall directed the money realized on the judgment of Shuman as administrator v. J. B. Hall to be paid out to the creditors of their father.   As they had a perfect right to do this, it was competent for the administrator to prove this fact, and, as it occurred nearly a year before the present proceeding was instituted, and without any

question as to the validity of this judgment being raised, such payment would have been a protection to the administrator even had a charge of collusion been subsequently made with success, he not being a party in any manner to such collusive action. These assignments are not sustained.

Seventh, eighth, fifteenth, twenty-fifth and twenty-eighth assignments. These relate to the question whether Shuman could set off against the money he did receive any debt that Hall owed him. He held a judgment against Hall in his individual capacity, and he received, as one of Hall's creditors, a portion of the proceeds derived from the sales under his judgment as administrator. The money he received was paid him by direction of the heirs of Mrs. Hall, as a creditor of J. B. Hall. That money he had the right to keep as his own, and he was therefore not responsible to account for it as if he had received it in his capacity as administrator. These assignments are not sustained.

Eleventh, twelfth, thirteenth and seventeenth assignments. The matters covered by these assignments present the question whether Mrs. Hall did not give her share of the crops to her husband to assist in supporting the family. Of course it was competent for her to do so if she chose. There is no evidence that she ever made such a gift, but the appellant contends that from their mode of living and from the fact that she never demanded any share of the crops, an inference of a gift of her share should or might be drawn. The learned court charged the jury that where a husband lives upon the real estate of his wife, or by her consent takes the income of her estate, and she makes no demand upon him for an account, and the money is spent in support of the family, the law presumes a gift of the income to the husband, and no liability on his part to account for it arises, but that where the husband contracts with his wife to pay her the income, or a part of it, he becomes her debtor to that extent. The court then left it to the jury to say how it was in this case and directed them that if they found there was a contract the husband could lawfully give judgment for the amount he owed under the contract. We see no error in this. The cases cited for the appellant are cases in which there was no contract affecting the question, and of course in all of them there would be no liability. But the jury has found that there was a contract

in this case and that disposes of the question. These assignments are not sustained.

Nineteenth assignment. The court below affirmed the tenth point of the plaintiff, but qualified it by saying that if Shuman paid out the money with no knowledge of the fraud in the judgment, he would not be affected by the fraud. This, as we have already said, is correct, and the assignment is dismissed.

The twenty-second assignment has been already considered and is dismissed.

The twenty-third assignment cannot be sustained because the fourteenth point of the plaintiff required a binding instruction to find for the plaintiff which of course could not be done. The matters of fact were disputed and were necessarily submitted to the jury.

The twenty-fourth and twenty-sixth assignments have already been considered. They are without merit and must be dismissed.

The twenty-seventh, twenty-ninth and thirtieth assignments have been incidentally considered heretofore and cannot be sustained. When the judgment note was handed to Shuman there was no presumption of its invalidity attaching to it. The contrary would be the case. If the plaintiff allowed a whole year to go by without impugning it in any way, we cannot see how Shuman is to be affected by an allegation of fraud then made for the first time.

Judgment affirmed.