Orndoff et al. *v.* Consumers Fuel Co. et al.,
Appellants.

Argued April 18, 1932. Before Frazer, P. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*James J. Purman,* with him *Austin V. Wood,* for appellant, Consumers Fuel Co.—The court had no jurisdiction under the Declaratory Judgment Act: Pittsburgh's Consolidated City Charter, 297 Pa. 502.

This special remedy will not be applied "if another legal remedy is equally available:" Dempsey's Est., 288 Pa. 458, 460; List's Est., 283 Pa. 255, 257; Leafgreen v. LaBar, 293 Pa. 263, 264.

Ejectment or trespass is sufficient remedy: Bartley v. Phillips, 165 Pa. 325; Bartley v. Phillips, 179 Pa. 175; Williams v. Fowler, 201 Pa. 336; Hicks v. Gas Co., 207 Pa. 570; Barnsdall v. Gas Co., 225 Pa. 338.

Appellant is entitled to six-eights of oil.

Bearing in mind that on June 2, 1922, when G. T. Anderson made the lease of that date, no operations had been commenced on the land and that none had been commenced in the lifetime of Elizabeth J. Anderson, it follows as matter of law that the lease of that date is absolutely void: Marshall v. Mellon, 179 Pa. 371; Hill v. Roderick, 4 W. & S. 221; Blakley v. Marshall, 174 Pa. 425; Deffenbaugh v. Hess, 225 Pa. 638; Dickson v. Fertig, 21 Pa. Superior Ct. 283.

Orndoff did not execute the lease. No oil was reserved to Orndoff and he was bound by assignment of the prior lease and not entitled to royalty reserved in a lease which he did not sign and refused to execute: Swint v. Oil Co., 184 Pa. 202.

Orndoff was incompetent: Krumrine v. Grenoble, 165 Pa. 98; Kauss v. Rohner, 172 Pa. 481; Roth's Est., 150 Pa. 261; Wright v. Hanna, 210 Pa. 349; Arrott Mills Co. v. Mfg. Co., 143 Pa. 435; Murphy v. Murphy, 24 Pa. Superior Ct. 547; Acklin v. Oil Co., 201 Pa. 257.

*J. I. Hook,* of *Scott & Hook,* with him *Hamilton & Pipes,* for appellant, G. T. Anderson.—The court below erred in dismissing the exceptions filed on March 31, 1931, by appellant, because they were filed more than thirty days after the judgment was entered on the issues of fact and the declaration: Mindlin v. O'Boyle, 283 Pa. 352; Harris v. Mercur, 202 Pa. 313.

Appellant is entitled to have the proceeds from the sale of one-eighth of the oil impounded and invested during his natural life under the lease from the remaindermen: Blakley v. Marshall, 174 Pa. 425; Dickson v. Fertig, 21 Pa. Superior Ct. 283.

Appellant's right to have the proceeds from the sale of one-eighth of the oil impounded and invested, cannot be defeated by the lessee reserving to him an additional one-forty-eighth of the oil, by the lease of June 2, 1922: Grove v. Hodges, 55 Pa. 504; Carnegie Nat. Gas Co. v. Phila. Co., 158 Pa. 317; Mercur v. R. R., 171 Pa. 12; Aye v. Phila. Co., 193 Pa. 451; Advance Industrial Supply v. Metallic Co., 267 Pa. 15; Saltsburg Colliery Co. v. Coal Mining Co., 278 Pa. 447; Dickson v. Fertig, 21 Pa. Superior Ct. 283.

*W. J. Kyle,* of *Kyle & Reinhart,* with him *Challen W. Waychoff,* for appellees.—The court had jurisdiction: Kariher's Petition (No. 1), 284 Pa. 455.

The claim that the minor children of Rosetta Abercrombie will not be bound by the court's decision is without foundation. Their guardian is a party.

The lower court found that the interest of J. B. Orndoff was not and is not adverse to Rosetta Abercrombie or the parties to this action claiming under her and this is true.

It is the adverse interest only that disqualifies, not adverse testimony: Carpenter v. Ins. Co., 161 Pa. 9; Darragh v. Stevenson, 183 Pa. 397; Rine v. Hall, 187 Pa. 264; Horne & Co. v. Petty, 192 Pa. 32.

It is not the fact that the witness is interested in the outcome of the suit which disqualifies him. His interest

must be adverse: Toomey's App., 150 Pa. 535; Gerz v. Weber, 151 Pa. 396; Rine v. Hall, 187 Pa. 264, 278; Norristown Trust Co. v. Lentz, 30 Pa. Superior Ct. 408, 410.

Parol evidence is inadmissible to contradict or vary the terms of a written instrument; but it may be admitted to explain and define the subject-matter of a written instrument; to prove a consideration not mentioned in the deed provided it be not inconsistent with the consideration expressed in it: Martin v. Berens, 67 Pa. 459; Miller v. Miller, 284 Pa. 414; Gandy v. Weckerly, 220 Pa. 285; Humbert v. Meyers, 279 Pa. 171; Wolverine Glass Co. v. Miller, 279 Pa. 138, 146; Evans v. Edelstein, 276 Pa. 516; Neville v. Kretzschmar, 271 Pa. 222; Montgomery v. Petriken, 29 Pa. 118; Phillip's Est. (No. 2), 205 Pa. 511; Whelen v. Phillips, 151 Pa. 312; Packer's Est. (No. 2), 246 Pa. 116.

The lease from the remaindermen is a grant to the lessee, his heirs and assigns, of, "all the oil and gas in and under" the said premises, etc. Oil is a mineral and, being a mineral, is a part of the realty, and a lease of the land for the purpose of its development is in legal effect a sale of a portion of the land: Stoughton's App., 88 Pa. 198, 201; Blakley v. Marshall, 174 Pa. 425, 429; McIntosh v. Ropp, 233 Pa. 497, 512; Hutton v. Carnegie, 51 Pa. Superior Ct. 376, 381; Hamilton v. Foster, 272 Pa. 95, 102.

The life tenant and remaindermen may contract separately concerning their respective estates, and when they do each is entitled to the consideration agreed upon: Agnew's Est., 17 Pa. Superior Ct. 201, 203; 43 A. L. R. 811.

OPINION BY MR. JUSTICE SCHAFFER, June 30, 1932:

This is a declaratory judgment proceeding brought to determine the amount of oil royalty payable by Consumers Fuel Company to the respective lessors under oil and gas leases held by it, and the proportions and man-

ner in which the lessors shall share in the royalties. There are two appeals, one by the Consumers Fuel Company, the lessee, and the other by G. T. Anderson, one of the lessors. They will both be disposed of in this opinion.

It is contended by the Consumers Company that a declaratory judgment proceeding is not the appropriate remedy; that ejectment, trespass or equity should have been invoked. We are not impressed with this view. It would be difficult to settle in ejectment all the rights and claims of the three interests involved;—impossible, it would seem, to have adjusted them in trespass, and, while they might have been worked out in equity, that is not a more appropriate remedy than the one invoked, in which the judge sat without a jury under the Act of April 22, 1874, P. L. 109. To the argument that, as there are minors' interests to be affected, there is no jurisdiction by declaratory judgment, because we said in Kariher's Petition (No. 1), 284 Pa. 455, 471, jurisdiction will never be assumed unless all the parties are sui juris, it is sufficient to observe that in so stating we did not mean to close the door to declaratory judgment proceedings on minors who are represented by guardians as those in this case are.

A recital of the facts disclosed by the record will make clear the questions with which we have to deal. Elizabeth J. Anderson died May 4, 1907, seized of a tract of land in Greene County containing about 70 acres. She left surviving her husband, G. T. Anderson, who is still living, four sons, and a daughter Rosetta Abercrombie, who died March 27, 1925, leaving six children, three of whom are minors, having as their guardian the State Bank & Trust Company of Elm Grove, West Virginia. On December 22, 1915, the five children of Elizabeth J. Anderson, owning the entire estate, subject to the life estate of their father, G. T. Anderson, as tenant by the curtesy, made an oil and gas lease to John B. Orndoff, in which it was provided that the lessee should pay to

the lessors a quarterly rental of $25 until a well was completed, and, if oil be found, that the lessee should deliver into pipe lines, free of charge, one-eighth of the oil to the credit of the lessors. When this lease was made, G. T. Anderson was in possession of all of the land as tenant by the curtesy and is so still. He did not join in the lease. The lessors advised the lessee that when he desired to drill, he would have to deal separately with the life tenant, and that no part of the one-eighth of the oil reserved could be used for that purpose. The court found as a fact that such information had been given by the lessors. Orndoff, the lessee, and his brother, who had an interest in the lease, assigned it on October 5, 1916, to City & Suburban Gas Company of Wheeling, West Virginia, advising that company of the existence of the life estate and that the lease gave no right of entry. In this lease the Orndoffs reserved to themselves an additional one-eighth of the oil. The assignee paid the annual rental to the lessors or their assigns and paid nothing to the life tenant.

In the year 1917, after the assignments of the lease, John B. Orndoff purchased four-fifths of the estate in remainder from the four sons of Elizabeth J. Anderson, subject to the lease they had made with him. It is in this capacity as lessor and as plaintiff that Orndoff appears in this proceeding and not as lessee, the other lessors and plaintiffs being the children of Rosetta Abercrombie, who own the other one-fifth in remainder. On June 2, 1922, the tenant by the curtesy, G. T. Anderson, and his daughter, Rosetta Abercrombie, executed an oil and gas lease of the land in question to the Natural Gas Company of West Virginia. The lease of December 22, 1915, from the remaindermen was still in force when this later one was signed. It is not disputed that this lease was void as to Rosetta Abercrombie, who had executed the earlier one. The lessors named in the later lease were G. T. Anderson, Rosetta Abercrombie and John B. Orndoff. The latter refused to execute it. By the terms of

this document, the lessee was to deliver into the pipe lines to the credit of the lessors one-eighth of the oil produced, to be paid to the lessors in the following proportions: one-sixth to G. T. Anderson, one-sixth to Rosetta Abercrombie and four-sixths to John B. Orndoff. It was set forth in the lease that the interest of G. T. Anderson was to be in effect only during his lifetime. As Orndoff did not sign this lease and as Mrs. Abercrombie had parted with her rights under the prior one, the only person whose compensation was determined by it is G. T. Anderson at one-sixth of one-eighth or one-forty-eighth. We cannot subscribe to the position of the Consumers Company that Anderson had no estate in the land nor the right to place an oil and gas lease thereon. He could not grant the oil and gas rights without the joinder of the remaindermen (Marshall v. Mellon, 179 Pa. 371), but in virtue of his life tenancy when they had granted their interest he could deal on his own account for possession of the property which the lessee could not acquire against him.

The City & Suburban Gas Company became insolvent in 1924 without having obtained from G. T. Anderson any right to·enter on the land. All of its assets were sold at judicial sale to defendant, Consumers Fuel Company. On June 8, 1925, after the Consumers Fuel Company had acquired the lease of December 22, 1915, by judicial sale of the assets of the City & Suburban Gas Company, the Natural Gas Company of West Virginia, lessee under the lease of June 2, 1922, from G. T. Anderson, assigned it to the Consumers Fuel Company. Eight days later, the Consumers Company, then being the owner of both leases, entered on the land and began to drill a well, which, upon completion, produced oil in large quantities. While the latter lease was an incomplete contract, because not signed by all the parties named in it as lessors, the Consumers Fuel Company acted under it in entering upon the land and drilling the well. Even if an agreement be incomplete, a party who

acts upon it and accepts benefits under it cannot be allowed to deny its validity as to the party who signed and performed it and thus escape payment for the benefits received: Grove v. Hodges, 55 Pa. 504; Carnegie Nat. Gas Co. v. Phila. Co., 158 Pa. 317. At the time the well was being drilled, Orndoff, owner of the four-fifths remainder interest, filed a bill in equity, alleging that the lease had expired by failure to pay rental and seeking to enjoin further operations. This litigation was settled out of court by written agreement to which the Consumers Fuel Company and Orndoff were parties, in consideration of $5,500 paid by the Consumers Company to Orndoff in which the lease of December 22, 1915, was expressly "ratified, affirmed, approved and consented to."

The claim of the Consumers Fuel Company on its appeal is that it is required to give up in all only one-eighth of the oil produced as royalty. The claim of G. T. Anderson is that he is entitled to one-sixth of one-eighth of the rental set apart to him under the lease of June 2, 1922, and in addition as against the remainder interests to have the one-eighth of the oil impounded and sold and to be paid the income derived from the proceeds during his life. The claim of John B. Orndoff and the other owners of the remainder interests is that they are entitled to receive the one-eighth royalty, that it should not be impounded, and that Anderson is entitled to have paid to him by the Consumers Company, in addition to the one-eighth to be paid to them, one-forty-eighth of the oil produced. The court below decided that the remainder interests are entitled to one-eighth of the oil, clear of any claim of Anderson, and that he is entitled to receive from the Consumers Company the proceeds of one-forty-eighth in addition to the one-eighth to be paid to the remaindermen, and that the Consumers Company must pay one-eighth and one-forty-eighth. Some point is made of the fact that on December 2, 1926, Anderson presented his petition to the orphans' court praying for the appoint-

ment of a receiver of the one-eighth of the oil produced. The Consumers Fuel Company joined in this petition. John B. Orndoff filed an answer thereto, and the court, by an interlocutory decree without any determination of the merits of the controversy, impounded the oil and appointed a receiver with power to sell it and invest the proceeds in legal securities. This decree, however, was entered by consent and without prejudice to the rights of any of the parties in this proceeding.

One of the contentions advanced by the Consumers Fuel Company is that the lease of June 2, 1922, is absolutely void. It bases its argument on the case of Marshall v. Mellon, 179 Pa. 371, which holds that where no oil or gas operations have been commenced on land before an estate for life has accrued, the tenant for life has no right to operate for oil or gas himself and cannot give such a right to any person by lease. The principle there announced is an entirely sound one, but it has no application to the facts before us. Here, the remaindermen, whose rights could not be affected by any lease made by the life tenant, had previously leased their rights. What the life tenant did by the lease of June 2, 1922, was to give a right of entry as against himself, which the remaindermen could not give by the previous lease. The life tenant's lease was a valid one as between him and the Consumers Company and the Consumers Company recognized its validity by entering upon the land after the lease was executed. Only after it acquired the rights of the life tenant could it enter upon the land and drill. It can not now be heard to assert that the lease is void. In Blakley v. Marshall, 174 Pa. 425, the life tenant and the remaindermen had joined in the same conveyance or lease without any agreement as to the division of the royalties; here, the life tenant and remaindermen parted with their respective and distinct interests by separate agreements.

It is further argued that the two leases were as to the Consumers Company in fact but one. No such conten-

tion could prevail in view of the fact that the predecessor of the Consumers Company dealt with Anderson under the second lease. Manifestly it was not the intention of the parties, either lessor or lessee, that the two documents should be considered as one. The remaindermen, as before stated, were dealing on their own account, and Anderson on his, and neither their rights nor his under the separate leases could be affected by the circumstance that the Consumers Company ultimately acquired its complete rights as lessee in the property under both of them. Furthermore, the testimony discloses that when the remaindermen made the original lease to Orndoff, they expressly notified him that he would have to deal independently with Anderson. The testimony of Orndoff to the effect that the remaindermen were entitled to the full one-eighth royalty, that they had so notified him when he took the first lease, and that they had then informed him that he would have to deal independently with their father, Anderson, was not incompetent as hearsay or as varying the first lease by parol. That lease stipulated that they were to be paid one-eighth of the royalty and what he testified to was confirmatory of its terms and not variant of them. It is contended that Orndoff was incompetent as a witness, because of the death of Rosetta Abercrombie. Orndoff was not testifying adversely to the interests of Rosetta Abercrombie, but in favor of the claims of her children. It is not adverse testimony but an adverse interest which disqualifies a witness: Dickson v. McGraw Bros., 151 Pa. 98, 100; Darragh v. Stevenson, 183 Pa. 397, 401; Rine v. Hall, 187 Pa. 264, 278; First Nat. Bank of Bloomsburg v. Gerli, 225 Pa. 256, 260; Edmundson's Est., 259 Pa. 429, 436. G. T. Anderson was not an incompetent witness. He was not a party to the lease of 1915 under which the children of Rosetta Abercrombie now claim, nor did he testify adversely to their interest. No objection was made to his competency by their counsel. Charles Anderson was also competent as a witness.

While he was a party to the lease of 1915, he had no interest in this suit, as he had parted with his share of all royalties by assigning it to Orndoff.

Among other claims set up by the Consumers Company is that Orndoff is estopped by the averments in the bill in equity filed by him in which he averred that by reason of the outstanding life estate in Anderson, he, Orndoff, was not entitled to the immediate possession of the land and oil, and therefore could not institute and maintain an action for possession. We fail to see how this averment can in any wise be construed as estopping Orndoff. It was in consonance with the fact and the legal situation. These, however, were changed when Anderson executed the lease which gave to his lessee and to the Consumers Company, claiming through it, the right of entry.

The circumstances indicate unerringly that the Consumers Fuel Company knew all about the tenancy by the curtesy of Anderson, as it did not attempt to enter upon the land under the lease of 1915, nor until it had acquired by assignment from the Natural Gas Company of West Virginia the lease of 1922 executed by Anderson, which gave it the right of entry. There can be no question that the Natural Gas Company of West Virginia would have had to pay to Anderson the royalty required to be paid to him under the lease of 1922 and the Consumers Company as assignee thereof is just as much bound by the covenant to pay him as the former was.

We now come to the appeal of G. T. Anderson. The court below decided that he was not entitled to have impounded the proceeds of one-eighth of the oil sold, and to receive the income therefrom for life, but that he was entitled under the separate lease which he executed to receive payment for one-forty-eighth of the oil. Following the court's decision, the appellant did not file exceptions as required by the Act of April 22, 1874, P. L. 109, within thirty days. Proceedings under this act must strictly comply with all the provisions thereof:

Mindlin v. O'Boyle, 283 Pa. 352. Exceptions filed after the expiration of the thirty days are without effect or validity: Harris v. Mercur (No. 1), 202 Pa. 313. However, even though the exceptions had been filed in time, the appellant's contention that he is entitled to have the proceeds from the sale of one-eighth of the oil impounded and invested during his life could not prevail in view of the fact that the dealings between the lessee and the remaindermen for the lease excluded him from its benefits and he subsequently dealt with his interest on his own account. While life tenants cannot grant mining or oil or gas rights which are effective against remaindermen (Blakley v. Marshall, supra; Marshall v. Mellon, supra) we have not that situation to deal with. Here, the remaindermen granted the right subject to the lessee's obtaining the right of entry from the life tenant. In doing so, the lessee dealt with him on its own account, just as its predecessor lessee had dealt with the remaindermen for their interest. Furthermore, on the trial all that the appellant, Anderson, claimed was that he was entitled to one-forty-eighth of all the oil produced from the leased premises during his lifetime. He then made no claim to have the proceeds of the one-eighth of the oil impounded and the interest to be paid to him for life. On appeal, he cannot change his ground and present a new position not put forth in the court below: Prenzel v. Apex Hosiery Co., 299 Pa. 17, 19; Foulk v. Hampton, 299 Pa. 272, 275.

The judgment of the court below is affirmed and it is directed that each of the appellants shall pay the costs of its and his appeal.