## Jenkins' Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the following extracts from the adjudication and supplemental adjudication of

. Van Dusen, J., auditing judge.—This account was filed by Daniel S. Blackman in response to an order entered by this court on December 18, 1933.

The question raised is whether the relation between Daniel S. Blackman and Ivie L. Jenkins was that of trustee and cestui que trust, or agent and principal. If the latter, then this court is without jurisdiction to determine the rights and liabilities of the parties.

The Act of June 26, 1931, P. L. 1384, conferring upon the orphans' court "the control, removal, discharge, and settlement of accounts of trustees of trusts inter vivos", does not extend to matters of agency: In re Miller's Estate, 19 D. & C. 141: see also Pittsburgh National Bank of Commerce v. McMurray, 98 Pa. 538.

The relation of the parties is based upon the following writings:

"Schibener, Boenning & Company
Investment Bonds
1615 Walnut Street, Phila.

November 12, 1925.

Mrs. Ivie L. Jenkins,
10 Virginia Avenue,
Atlantic City, N. J.

My dear Mrs. Jenkins:

Referring to the list of securities which I am holding for you, subject to your instructions, as trustee, as follows:

$2,000  A. T. Baker 6½ s.
$2,000  Soper-Mitchell Coal 7 s.
$2,000  Minn., St. Paul & S. S. Marie 5½ s.
$2,000  Pennsylvania Electric Corp. 6½ s.
$2,000  Advance Bag & Paper 7 s.
$2,000  Vulcanite Portland Cement 7½ s.
  20  Shares Scott Paper 7% Preferred.

I am arranging to send you on the first day of each month, check for $78 covering the average income due from this account. This arrangement will start on December 1st next, and each and every month after that date, as stated to you, you will receive a check from our cashier. The account will balance itself at the end of each 12 months.

This arrangement is being done in order to provide for you a regular means of

672

income. This plan commended itself to me rather than an exchange of securities to effect the purpose.

If, at any time, you desire to remove the bonds it, of course, can be done upon your request to that effect, making an adjustment at the same time with us for any sums either owing to us or to you.

If this is all in accordance with your instructions, will you be good enough to confirm it, and oblige,   Very truly yours,

DSB/G   DANIEL S. BLACKMAN."

"November 12, 1925.

Messrs. Schibener, Boenning & Co.,
    1615 Walnut Street,
        Philadelphia.
Gentlemen:

Referring to the arrangement which I have today made with Mr. Blackman, I confirm my understanding of his letter, copy of which is attached hereto.

Very truly yours,

IVIE L. JENKINS."

The circumstances surrounding the writings are disclosed mainly in the statement and briefs of counsel, as no testimony was offered at the audit. I assume that my recital of the facts will be admitted to be correct by both parties, and if there is any dispute as to the facts, it will be necessary to put the matter down for further hearing.

The husband of Ivie L. Jenkins had been employed by Blackman as a salesman of securities. Upon her husband's death, Blackman helped her with the funeral arrangements, etc. They had conversations as to how she could be assured of a regular monthly income from her securities, instead of the irregular payments of interest as it came due. These conversations crystallized into the writings above mentioned.

The securities turned over to Blackman were all coupon bonds. While Blackman's writing recites 20 shares of Scott Paper Company preferred, that was received in exchange for a bond on that day.

The securities were kept in a joint deposit box to which each had access and each had a key.

Subsequently there were sales and purchases, and the bone of contention seems to be the responsibility for the purchases.

Ivie L. Jenkins died April 17, 1933. Myrtle N. Keith is ancillary administratrix of her estate, and demands the accounting.

While Blackman designates himself as "trustee" in the writing of November 12, 1925, there is nothing to indicate that he took upon himself the duties and responsibilities of a trustee. He writes "I am holding for you, subject to your instructions, as trustee". If he is to hold as instructed, then he has no discretion whatever, and is little more than a custodian. The securities were under the control of Mrs. Jenkins, and she could withdraw them at any time upon making settlement for any cash overdraft. No one but Mrs. Jenkins had an interest in the securities, and the conclusion must be that title remained in her, and that the relation existing was that of principal and agent.

"Where the existence of an agency relationship is not otherwise clearly shown, as where the issue is whether a trust or an agency has been created, the fact that it is understood that the person acting is not to be subject to the control of the other as to the manner of performance determines that the relationship is not that of agency": American Law Institute, Restatement of the Law of Agency, sec. 14(b).

I am of the opinion that this court has no jurisdiction in this matter.

## Supplemental adjudication

By my adjudication filed March 29, 1934, which was written upon the assumption that there was no dispute as to the facts, I suggested that, in the event of such dispute, the matter should be put down for a further hearing.

Accordingly, a further hearing was had and testimony taken.

The writings setting forth the arrangements between Ivie L. Jenkins and Daniel S. Blackman are dated November 12, 1825, and quoted in full in the adjudication of March 29, 1934.

The purchases and sales of securities were made through Schibener, Boenning & Company, brokers. The ledger sheets of this firm were offered in evidence.

They show, first, an account opened in the name of Ivie L. Jenkins on September 3, 1924, which was closed out on November 12, 1925, the date of the writings above.

A new account was opened November 12, 1925, in the title "Ivie L. Jenkins, D. S. Blackman, Trustee", which was closed out on December 2, 1929.

An account was opened February 16, 1927, in the name of "Miss Ivie L. Jenkins", and closed August 6, 1928.

The securities in the "Ivie L. Jenkins, D. S. Blackman, Trustee," account were in the possession of Schibener, Boenning & Company until October 19, and 26, 1926, when they are marked "delivered".

On October 22, 1926, a box was rented at Colonial Trust Company in the name of "Ivie L. Jenkins", with two powers of attorney or "deputyships" to S. Esther George and Daniel S. Blackman for access to the box. S. Esther George was Mr. Blackman's secretary. This box was closed September 19, 1932.

A box was opened at Provident Trust Company on December 8, 1932, with Ivie L. Jenkins as principal and Daniel S. Blackman and S. Esther George as deputies.

It was testified by Miss George that Mrs. Jenkins' securities were placed in these boxes.

On November 3, 1926, a checking account was opened at Colonial Trust Company in the name of "Miss S. E. George or Mr. D. S. Blackman (Trustees)", in which the interest or dividends were deposited and the monthly payments made to Mrs. Jenkins.

I find nothing in the testimony offered to change the conclusions of my adjudication.

When the stocks were bought, they were put in Mrs. Jenkins' name. The securities were placed in a box rented in her name. All were subject to her control and instructions, as set forth in the writings of the parties.

It is true that a bank account was opened in names other than hers, but the monthly balances were quite inconsequential, and it was a means adopted to segregate her income and carry out the understanding that the income should be remitted to her in equal monthly payments.

Notwithstanding the use of the word "trustee", I cannot find that Blackman had any of the duties or responsibilities of a trustee. The legal title remained in Mrs. Jenkins, and Blackman was merely an agent for the limited purpose set forth in the writings.

In Bair v. Snyder County State Bank et al., Admrs., 314 Pa. 85, 89, the relationship was that of debtor and creditor and in that respect differs from the instant case, but the language of Mr. Justice Kephart is most appropriate. He said:

"No particular form of words or conduct is required to manifest the intention to create a trust. Such manifestation of intention may be written or spoken

674

words or conduct indicating that settlor intended to create a trust. See Trusts Restatement [American Law Institute, 1930] Tentative Draft No. 1, section 36; Perry on Trusts, 7th edition, volume 1, section 122, page 144; Smith's Estate, 144 Pa. 428; Ranney v. Byers, 219 Pa. 322. Nevertheless, lack of formality does not obviate the necessity for the appearance of all the elements of a completed trust. Every trust symptom must be present, regardless of informality surrounding the inception of the relationship, or none exists. A trust must be created by clear and unambiguous language or conduct, it cannot arise from loose statements admitting possible inferences consistent with other relationships."

As this court has no jurisdiction in cases of agency, I confirm the order made March 29, 1934, returning the account to the files "Not audited."

*J. Vincent Brophy*, for exceptant; *Maurice W. Sloan*, contra.

LAMORELLE, P. J., May 31, 1934.—We all agree in the ruling of the auditing judge, both as to his findings of facts and the application of the law thereto.

Calling oneself a trustee does not make a man a trustee, unless a trust is created, and we find no trust relation in the instant case. Whatever remedy or redress exceptant has is a matter for courts other than ours.

All exceptions are accordingly dismissed.