## Bair, Appellant, *v.* Snyder County State Bank et al., Admrs.

Argued November 29, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Richard H. Klein,* for appellant.

*A. Francis Gilbert,* with him *W. Logan MacCoy,* for appellees.

OPINION BY MR. JUSTICE KEPHART, January 2, 1934:
Samuel E. Slaymaker, President of the Snyder County State Bank, purchased two negotiable certificates of deposit, one for $8,000, and the other for $12,000, payable to his order twelve months after date. January 1, 1929, while at his winter home in North Carolina, he wrote the following letter to the bank:

"S. E. SLAYMAKER
SOUTHERN PINES
NORTH CAROLINA

Jany. 1-29.

"Snyder C. Trust Co.,
Shamokin Dam, Pa.

"Gentlemen: I wish you would place the two certificates of deposit in shape that a check would cover them. I don't intend to draw out the money, but in case anything should happen to me I want a check I've drawn for this amount to go to the party in whose name it is drawn and not to be a part of my estate.

"This is just precautionary......"

In reply to this letter the cashier of the bank wrote him that he "had received this letter dated January 1, 1929, and......would carry out the instructions [and directed him] to forward the certificates." Decedent answered as follows:

"S. E. SLAYMAKER
SOUTHERN PINES
NORTH CAROLINA

Jany. 11-29

"Snyder Co. State Bank,
Northd.

"Gentlemen: I am enclosing *your* Certificates of deposit as follows:

| | | | |
|---|---|---|---|
| No. 44 | May 28-28 | 6 mos........ | $8,000. |
| No. 53 | July 6-28 | 12 mos........ | $12,000. |
| No. 54 | July 13-28 | 12 mos........ | $5,000. |

aggregating $25,000.

"The $5000, No. 54, has already been placed to my checking a/c—

"The others No. 44 & No. 53, I have endorsed & you can place them in such shape that a check issued by me for amt. of this will be honored in case anything happens me, but of course I want them to bear interest & the check will not be used so as to take money out of bank but only to transfer it to party in whose name check is drawn—I hope I have made myself understood. If not let me know & I'll try again......"

The cashier received these two certificates for $8,000 and $12,000, and put them, together with the two letters, in the small money vault inside the main bank vault.

During the summer of 1929, decedent returned to his residence in Snyder County, and on one of several occasions when he conversed with the cashier, the latter suggested the two certificates be consolidated into one for $20,000. This was done, Mr. Slaymaker endorsing the new certificate. The cashier stated that "at the time he handed the certificate back to me, Slaymaker said: *'I* want this to stay here on interest and *I want this money to go to a party I have named in a check.'* " When the cashier pointed out to him that his check would not be good after his death, Slaymaker said: "The check was only to let you know who the money was to go to."

Upon Slaymaker's death, his administrators found in his safety deposit box an envelope labelled, "Property of Miss Berdelia Bair," in which was a check:

"No. 299

"S. E. Slaymaker
    Shamokin Dam, Penna.,
        Hummels Wharf, Pa., Dec. 19, 1928.
"Pay to the

Order of E. B. Bair .....................$20,000.00
Twenty Thousand — ......00/100 ...........Dollars
    "This is to cover two certif. of deposit $12,000 & $8000.
Snyder County State Bank
60-1817        Hummels Wharf, Pa.
        S. E. Slaymaker."

The administrators claimed the sum of $20,000 as part of his estate, and appellant claimed the money as the person named on the check. The court below directed a verdict for the administrators.

Appellant claims the fund on the basis that decedent created a trust for the benefit of himself for life with remainder to appellant. No particular form of words or conduct is required to manifest the intention to create a trust. Such manifestation of intention may be written or spoken words or conduct indicating that settlor intended to create a trust. See Trusts Restatement, American Law Institute, 1930, Tentative Draft No. 1, section 36; Perry on Trusts, 7th edition, volume 1, section 122, page 144; Smith's Estate, 144 Pa. 428; Ranney v. Byers, 219 Pa. 332. Nevertheless, lack of formality does not obviate the necessity for the appearance of all the elements of a completed trust. Every trust symptom must be present, regardless of informality surrounding the inception of the relationship, or none exists. A trust must be created by clear and unambiguous language or conduct, it cannot arise from loose statements admitting possible inferences consistent with other relationships.

Without speculating as to decedent's subjective intention, we must examine what he said or did to determine what he wished. Furthermore, the actions of the bank

and its staff are not evidence of decedent's intention. When he purchased the certificates of deposit the relation of debtor and creditor ensued. When these were sent to the bank, endorsed in blank, with instructions to place them in such shape "that a check would cover them," he speaks in terms of honoring a check. In his second letter he indicates that a check which he has written is not to remove the money from the bank, but only to transfer it to the party in whose name it is drawn. These directions authorized the bank to create a credit for decedent, subject to check. The bank did not follow decedent's instructions, but retained the endorsed certificates. Had his instructions been carried out the endorsement and delivery of the certificate to the bank on which it was drawn would have been equivalent to giving the bank money, making a deposit of money to meet a check. But the bank through its cashier retained the certificates for the particular reason, as he states, that decedent wanted interest. The bank agreed to pay it and that was the only way, the cashier states, it could be accomplished. Interest in a fixed amount was to be paid by the bank to decedent. This is a circumstance that must not be lost sight of in determining the intention of the parties, for interest is ordinarily the charge demanded for the use of money: Pittsburgh Nat. Bank v. McMurray, 98 Pa. 538. Its imposition implies a debtor-creditor and not a trustee-beneficiary relation. See Trusts Restatement, supra, section 15, comment (g). In all these circumstances we have a continuance of the debtor-creditor relationship established between decedent and the bank when the certificates were purchased.

In analyzing a situation to determine the presence or absence of a trust, second in importance only to the manifested intention of the settlor to create a trust, is the presence of a trust res—specific, segregated, earmarked property or interests therein: Molera v. Cooper, 173 Cal. 259; Marble v. Marble, 304 Ill. 229; Tucker

v. Linn, 57 Atl. 1017 (N. J. Eq.); Hamer v. Sidway, 124 N. Y. 538. If there is a trust here, there must be a trust res.

The bank was not requested by decedent to hold the *certificates of deposit* in trust; they were to be placed in shape to meet a check. The money was not to be drawn out but to be transferred to the person named in a check. "Money" is dealt with and money only was in contemplation. But what money? The certificates were not cashed; the direction of the proposed settlor was not carried out; at no time was a fund set aside as the res of this trust; no segregation was made; and, as stated, the certificates were not directed to be held in trust. A trust without a res is impossible.

Even considering the proposed settlor's instruction concerning the placing of the money on deposit as fully executed, the money would have been there to meet any check he might have drawn on it. The mere statement to a bank that a certain sum of money is to go to a designated person on a check drawn by the depositor, does not place on the bank the obligations of a trustee. Such loose and unsatisfactory statements do not convert a complete title to funds which the bank has into a qualified one wherein it is a trustee, nor do they change the bank's character as debtor to one of debtor and creditor at the same time. This disposes of the cashier's statements concerning the conversation with Slaymaker wherein it was stated the check merely identified the party who was to get the money. As we have decided that no trust res existed and that the intention of the proposed settlor was not so manifested as to create a trust, the check standing by itself or connected with all prior circumstances could not alter this conclusion. *Every direction given by decedent, oral and written, is consistent with the already established debtor-creditor relationship between him and the bank,* and all together are not sufficient to change that relation. The bank throughout the whole proceeding was a debtor, an ob-

ligor; decedent, the obligee. All rights in this relationship were in the obligee. Decedent could have declared himself trustee of his rights against the bank, but it is impossible for an obligor to be a trustee of his obligation. Similarly, it cannot be trustee of the obligee's rights, for the minute those rights become vested in the obligor, the obligation is extinguished. See Trusts Restatement, supra, section 75, comments (a) to (i) inclusive. The bank could not be trustee of its obligation to pay decedent. It must be trustee of a sum of money earmarked as the res of a trust; decedent never manifested to the bank any intention to have this done. Every instruction which he gave the bank is harmonious with the conception of a deposit subject to check.

Appellant declares that when the certificate of deposit was endorsed, the bank was the owner not only of the certificate evidencing its indebtedness but the indebtedness was in fact discharged. This is the effect of the cashier's testimony. The bank owed money on the certificate. It always had and has title to the money on deposit. When the certificates were returned for the purpose indicated above, there was no cancellation of the debt, no transfer of the right to be paid, but the certificates were in its hands for the limited purpose of cancellation and credit. In every debtor-creditor relationship, the debtor receives title to the money loaned him. The bank, however, was never under any other obligation than to pay money. Here, to pay it to a person decedent named in a check, to transfer it to a party in whose name the check was drawn, a check, concerning the existence, location or payee thereof, the bank knew nothing. Decedent may have intended to give this sum to appellant through the check, but he failed in the most essential element of a gift—delivery of the check to her: Allshouse's Estate, 304 Pa. 481. Furthermore, however viewed, decedent seems to have negatived any final action by his statement that all he does *"is just precautionary."*

After a full consideration of the evidence, we are convinced that it is impossible to predicate thereon the existence of a trust as to the fund in the bank. Decedent's action amounted to nothing more than a direction, an authorization to the bank to pay to a person whom he would later disclose. No such person was disclosed while he lived; death revoked his order. The court did not err in denying appellant's motion for a directed verdict or for judgment n. o. v.

Judgment affirmed in this appeal and also in the appeal entered to No. 99 of January Term, 1932, and the order of this court vacating that judgment is stricken off, and it is futher directed that the principal of the judgment, together with interest and costs shall be paid from the money now impounded by the Prothonotary of the Court of Common Pleas of Snyder County to the Administrators c. t. a. of the Estate of Samuel E. Slaymaker, Deceased; the costs of this appeal to be paid by appellant.