## Grambo et al. *v.* South Side Bank and Trust Co., Appellant.

Argued March 6, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*T. A. Donahoe,* with him *Leo G. Knoll,* and *Carl Carey,* for appellant.

*Walter L. Hill, Jr.,* of *O'Malley, Hill, Harris & Harris,* with him *Willard M. Henkelman,* for appellees.

OPINION BY PARKER, J., July 19, 1940:

This is a proceeding for a declaratory judgment brought by the owners of a mortgage on real estate to determine rights of priority between that mortgage and another mortgage on the same premises held by defendant. Appellant first raises a question as to the applicability to the situation presented of the remedy under the Uniform Declaratory Judgments Act (Act June 18, 1923, P. L. 840, as amended by Act May 22, 1935, P. L. 228; 12 PS §831, et seq.). The court below thought that the act was appropriate and disposed of the question of priority in favor of plaintiffs. Defendant, the appellant, also contends that even if the court did have jurisdiction in this form, it reached an incorrect conclusion. The case was tried without a jury and there are no disputed facts.

On June 30, 1925, William Grambo, being then the owner of the real estate involved, together with his wife, conveyed it to Catherine Cunion. On July 12, 1925, Catherine Cunion executed, delivered, and recorded a mortgage to Peoples Mortgage Company in the sum of $4,500, and on July 17, 1925, she gave a mortgage for $700 on the same premises to William Grambo and Anna Grambo, his wife, as tenants by entireties. Each of the mortgages is admitted to be a purchase money mortgage, but the Grambo mortgage provided as follows: "This mortgage shall operate as a second purchase money mortgage to that of the Peoples Mortgage Company, Inc., for forty-five hundred ($4500) dollars." On July 11, 1927, Catherine Cunion gave to the Dollar State Bank & Trust Company, a mortgage for $3,600, and there was paid from the proceeds of that

mortgage to the Peoples Mortgage Company on the same date $3,479.85, the balance then due on the Peoples mortgage, and the Peoples mortgage was satisfied of record. On the same date, William Grambo executed and delivered an instrument in writing purporting to postpone the lien of his mortgage to the mortgage given to Dollar State Bank & Trust Company. The parties evidently overlooked the fact that Grambo and his wife were tenants by entireties for she either neglected or refused to join in the postponement. William Grambo died in 1930, so that the mortgage held by his wife and him vested in her as the survivor. Anna Grambo died in 1934 and the plaintiffs are her executrices. The defendant succeeded by assignment to the rights of the Dollar bank in the $3,600 mortgage. The defendant took a deed from Mrs. Cunion for the real estate, but it is conceded that the mortgage did not merge with the fee. The owner of the $700 mortgage and the owner of the $3,600 mortgage are each claiming priority as a first mortgage.

We are all of the opinion that the remedy was a proper one. It is true that the plaintiffs had a remedy, frequently employed, by foreclosing their mortgage. That remedy, however, under the circumstances would be expensive and slow and is further complicated by the fact that the defendant's mortgage has not merged in the fee now held by the defendant. If the plaintiffs were purchasers on their foreclosure they would not have a marketable title while the controversy remained unsettled and the closing of the estate might be long delayed. Even if a sale was made on either mortgage, complications would arise with relation to bidding and the executrices would be particularly embarrassed. It seems to us that it is a typical case for a declaratory judgment. We are supported in that view by *Conemaugh Iron Wks. Co. v. Delano Coal Co.*, 298 Pa. 182, 148 A. 94. In that case there was a dispute as to the lien of a judgment and the relation of that lien to the lien of a

180

mortgage. There was involved a question as to whether the land had been conveyed in fraud of the right of creditors. The Supreme Court there said (p. 188) : "We think that, if there is a fear of this mortgage being discharged by the proposed sheriff's sale, the status of the mortgage and the rights of the mortgagee can be determined in proceedings under the Declaratory Judgment Act, with all parties in interest on the record." All parties in interest are here upon the record.

Any other remedy available in law or equity would not be equally effective, serviceable, or expeditious: *Orndoff v. Consumers Fuel Co.,* 308 Pa. 165, 170, 162 A. 431. The act was not intended for, and should not be invoked in cases where the judgment sought can be had as expeditiously in the ordinary course of legal procedure as it can under the statute: *Nesbitt v. Mfrs'. Casualty Ins. Co.,* 310 Pa. 374, 380, 165 A. 403. "The purpose of passing the Uniform Declaratory Judgment Act, supra, was that 'issues could be speedily determined, which otherwise would be delayed, to the possible injury of those interested if they were compelled to wait the ordinary course of judicial proceedings' ": *Appeal of L. L. Kimmell,* 96 Pa. Superior Ct. 488, 490, approved in the Nesbitt case, supra.

On the merits of the controversy we find nothing to support the position taken by appellant, and on the contrary there are a number of decisions holding otherwise. In short, appellant says that it is entitled by virtue of its $3,600 mortgage to be subrogated to the lien of the $4,500 mortgage, although the latter has been satisfied, because it, by mistake, relied upon a postponement executed by only one of two tenants by entireties, owners of the $700 mortgage, and used part of the proceeds of the $3,600 mortgage to discharge the $4,500 mortgage. It claims that the lien of its mortgage should be declared entitled to priority over the plaintiffs' $700 mortgage.

It is not open to argument that the postponement exe-

cuted by the husband alone was of no avail in affecting the status of the lien of the Grambo mortgage, for the husband predeceased the wife and there is not a scintilla of evidence that the wife did anything to prejudice her interest in her mortgage. "Any alienation by one, the other not consenting, of any interest whatever in the estate, if allowed, would be an abridgment pro tanto of the rights of the other......The title and rights of the wife in an estate held by herself and husband are not liable to be conveyed, encumbered, or otherwise prejudiced or disposed of by her husband to any greater extent than though such an estate were vested in her exclusively in her own right": *Schroeder v. Gulf Ref. Co.*, 300 Pa. 397, 404, 150 A. 663. "There is no presumption flowing from marital relationship that one spouse in conveying the estate acted as agent for the other. To so hold would destroy the effect of the rule": *Thees v. Prudential Ins. Co.*, 325 Pa. 465, 467, 190 A. 895.

The law does not undertake to rectify all mistakes, so-called, made by individuals. Equity usually contents itself with relief in cases of mutual mistake of legal rights where it is possible to restore both parties to the statu quo: *Fink v. Farmer's Bank*, 178 Pa. 154 167, 35 A. 636. Applications for subrogation, such as is made here, have been made frequently to courts and refused, even where the equities were stronger than here.

*Campbell v. Foster Home Assn.*, 163 Pa. 609, 30 A. 222, is typical and in principle rules this case. Mrs. Campbell had given to an attorney a written power to sell real estate. The attorney, without knowledge of the principal, executed a mortgage for $7,500 and used $6,000 of the proceeds to pay off and satisfy a subsisting and valid mortgage on the same premises. The power of attorney was held not to be sufficient to support the mortgage for $7,500. The holder of that mortgage then asked to be subrogated to the rights of the holder of the $6,000 mortgage which had been satisfied. The Supreme Court said (p. 636): "The defendant simply loaned the

money, and, in order to remove a prior lien, paid it off without the knowledge or consent of the plaintiff. If a right of subrogation is acquired in such a state of facts we see no reason why it may not exist in every case of officious payment of the debt of another. Yet it is perfectly clear under all the authorities that such payments do not give any right of subrogation to the debt discharged."

The case of *McCleary's Appeal*, 20 W. N. C. 547, would seem to cover every aspect of this case. There, there was a valid first mortgage for $925. The second mortgage for $1,400 was a forgery but the mortgagee desired to have a first lien so he used $600 of the mortgage money, together with $325 furnished by the owner, to discharge the first mortgage and had it satisfied. When the forgery was discovered, the holder of the second mortgage filed a bill asking for a cancellation of the satisfaction of the former mortgage and subrogation. The Supreme Court held that that could not be done. To the same effect is the case of *Webster & Goldsmith's Appeal*, 86 Pa. 409. The syllabus in that case states the applicable principle as follows: "While subrogation is founded on principles of equity and benevolence, and may be decreed where no contract exists, yet it will not be decreed in favor of a mere volunteer, who without any duty, moral or otherwise, pays the debt of another. It will not arise in favor of a stranger, but only in favor of a party who, on some sort of compulsion, discharges a demand against a common debtor." Also, see *Union Joint Stock Land Bank of Detroit v. Byers*, 100 Fed. (2d) 82, and the very complete summary by Mr. Justice BARNES of the cases in which relief from mistake of law has been refused, in *First Nat. Bank v. Rockefeller*, 333 Pa. 553, 559, 5 A. 2d 205.

It will also be noted that the appellant has slept on its rights for 12 years. This of itself would make it very doubtful whether relief should have been granted if there were otherwise sufficient grounds: *Barnes &*

*Tucker Co. v. Bird Coal Co.,* 334 Pa. 324, 333, 5 A. 2d
146; *Goggins v. Risley,* 13 Pa. Superior Ct. 316.
Judgment affirmed.