Provident Trust Company, Exr., etc., et al.,
Appellants *v.* Lukens Steel Company.

2

Argued January 19, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Thomas C. Gawthrop,* with him *J. B. Colahan, Joseph Head, Jr., William E. Parke, W. H. Lathrop, J. Barton Rettew, Townsend, Elliott & Munson, Duane, Morris & Heckscher* and *Montgomery, McCracken, Walker & Rhoads,* for appellants.

*Wm. Barclay Lex,* with him *W. Perry Tyson* and *Norris, Bell, Lex, Hart & Eldredge,* for appellee.

OPINION BY MR. JUSTICE LINN, March 22, 1948:

This is a suit to determine the ownership of 10,000 shares of the common stock of Lukens Steel Company issued in the name of A. F. Huston, Trustee.

In 1917 Lukens Iron and Steel Company (hereafter called Iron Company) was a Pennsylvania corporation with 5,000 shares of common stock, having a book value of about $2,000 per share. All the stock was owned by 16 shareholders, most of them members of a family named Huston. As there was no ready market for the stock, appellants' brief states that bankers "were consulted with a view to making the capitalization more liquid."

The bankers, on December 7, 1916, made a written proposal to the Iron Company, which, with the addition of a suggested modification, became the contract ultimately performed. The proposal involved the formation of a new corporation with a capital of 60,000 shares, first preferred, par 100; 60,000 shares, second preferred, par 100, and 200,000 shares, common, par 50. At the suggestion of one of the shareholders of the Iron Company the common capital was increased to 210,000 shares. A new corporation, the Lukens Steel Company, was formed and the property of the Iron Company was transferred to it for its shares of stock pursuant to the agreement.

The 10,000 shares, the subject of this suit, constituted the increase over the 200,000 shares of common stock originally proposed by the bankers. It was the subject of the following provision in the bankers' revised proposal to the Iron Company dated December 8, 1916, "The remaining $500,000 par value of Common Stock shall remain in the treasury of the New Corporation, or shall be returned to the treasury of the New Corporation so that it shall be available for purchase by the officers and employees of the New Corporation, from time to time, upon such terms as may be approved by the Board of Directors of the New Corporation." The bankers, on January 22, 1917, agreed with the new company, the defendant: "We further agree to cause to be transferred to the Treasurer of your Company or such persons as you may designate 10,000 shares of the Common Stock so issued, to be held as Treasury Stock and to be sold

to employees of your Company upon such terms as your Board of Directors may from time to time determine."

On January 29, 1917, defendant's board "RESOLVED that the 10,000 shares of Common Stock standing upon the books of the Company in the name of A. F. Huston, Trustee, be held as Treasury Stock to be sold and issued to employees from time to time upon such terms as the Board of Directors may determine."

On June 27, 1917, the board adopted the following resolution: "WHEREAS the proposition of [the bankers], dated January 22d, 1917, provided as follows: 'We further agree to cause to be transferred to the Treasurer of your Company or such person as you may designate, ten thousand shares of the Common Stock so issued, to be held as Treasury Stock and to be sold to employees of your Company upon such terms as your Board of Directors may from time to time determine,' has been consummated and the ten thousand shares of Common Stock have been endorsed in blank and are now in the hands of the Secretary. Now, therefore, be it RESOLVED: that the ten thousand shares of Common Stock turned back to the Company by certain stockholders, be issued in the name of A. F. Huston, Trustee, to be held as Treasury Stock and to be sold to employees of the Company upon such terms as the Board of Directors may from time to time determine."

A certificate dated August 15, 1917, for 10,000 shares of common stock was issued in the name of A. F. Huston, Trustee, who endorsed it in blank and delivered it to defendant's Secretary and Treasurer at or about the time of issue; the certificate has remained in the possession of the company ever since. None of the 10,000 shares has been sold.

On January 18, 1946, the Provident Trust Company of Philadelphia, plaintiff, and the executor and trustee of the estate of A. F. Huston, deceased (in whose name as trustee the certificate had been issued), demanded that defendant return the stock to the parties or the

representatives of deceased parties, who were shareholders in the Iron Company in 1917 when the transaction was consummated. On failure to comply with the demand this bill was filed asking that defendant be restrained from parting with the stock; that it be ordered to deliver the certificate of stock to the plaintiff; "That new certificates for such shares of the capital stock of the defendant corporation, as may be distributable to the several persons for whom the plaintiff's decedent was acting, should be issued in place and stead of the certificate registered in the name of the plaintiff's decedent as Trustee, . . ." or, in the alternative, that defendant be required to pay the value of the shares "as of the date of the demand for delivery."

Personal representatives of three other deceased shareholders intervened as parties plaintiff. The chancellor filed an adjudication and recommended a decree dismissing the bill. He held that the Iron Company's shareholders made "an irrevocable gift" of the stock and added that if the gift were considered as conditional the plaintiffs had lost the right to assert breach of condition. His view may be summarized by the following quotation from his adjudication: "We feel that the designation of these 10,000 shares of stock as 'Treasury Stock' established definitely the status and indicated clearly an irrevocable gift to the new company. The stock belongs not to the old stockholders but to the present stockholders and, in our opinion, may be held as Treasury Stock, may be sold to employees or on the open market or may be retired according to the appropriate action of the present Board of Directors. In case this should not be so, there is still the question of a conditional gift and laches and the further question of stock issued without consideration, both of which must be decided in favor of the defendant."

A number of exceptions to the adjudication were sustained by the court in banc whose view can perhaps be most briefly stated by the following quotation from

its opinion: "To summarize, we conclude and hold that the stock, the subject of this Bill in Equity, was issued and delivered for a valuable consideration; that the owners thereof, by their agreement dated December 17, 1916, created a trust thereof for the uses and purposes in said agreement set forth; that said stock was held by A. F. Huston, Trustee, for the purpose of carrying out and complying with the terms of said trust, to wit, of transferring said stock to employees of the company who bought it; that said trust has not been terminated but is still in force; albeit the trustee has died and no substituted trustee has been appointed and the terms of the trust have not been complied with; that consequently plaintiffs are not entitled, at this time at least, to receive any of said stock contributed by them to said trustee regardless of any question of laches or estoppel; wherefore their bill must be dismissed."

We all agree that the bill must be dismissed but are not in accord with the conclusion of the court in banc that the trust exists. When the parties in 1917 performed their agreement the Steel Company had 10,000 shares "available for purchase by the officers and employees of the New Corporation from time to time upon such terms as may be approved by the Board of Directors of the New Corporation." A certificate representing the 10,000 shares was issued in the name of A. F. Huston, Trustee, who endorsed the certificate and delivered it to the defendant as required by the contract. The contribution by the Iron Company's shareholders of the shares was therefore not a gift, as the chancellor held, but a delivery of property for a consideration as required by the agreement. The agreement did not provide for the creation of a trust; the use of the word "Trustee" on the certificate is not sufficient for that purpose. In *Brubaker et al. v. Lauver et al.,* 322 Pa. 461, 185 A. 848, we said: "While no particular form of words or conduct is necessary to create a trust, the declaration of intention to establish one must be definite, clear and explicit,

and embody all the essential elements: see Bair v. Snyder Co. State Bank, 314 Pa. 85, 89, [171 A. 274]; Wallace's Estate, 316 Pa. 148, 151, [174 A. 397]; Restatement, Trusts, section 23 and comments. The conduct or language relied upon must impose enforceable duties upon the transferee as distinguished from a mere suggestion or wish that the transferee should use or dispose of the property in a certain manner; and the beneficiary must be definitely ascertainable: Lawrence v. Godfrey, 296 Pa. 474, [146 A. 107]; Smith's Estate, 144 Pa. 428, [22 A. 916]; Restatement, Trusts, sections 25 and 112. Unless the writing in the case at bar embodies all these elements, appellants' attempt to impose a trust must necessarily fail." See also *Wilbur Trust Co. v. Knadler,* 322 Pa. 17, 185 A. 319. The fiduciary relation described by the word as used on the certificate is that of principal and agent, Huston acting as agent for the other 15 shareholders of the Iron Company who were contributing to the Steel Company their respective proportions of the 10,000 shares in accord with their agreement of re-capitalization. When he endorsed and delivered the certificate to the defendant, as the agreement required, he had completely performed the agency. There is nothing in the agreement to indicate that Huston was to act as trustee to see that shares were sold to officers and employes on terms approved by the board of directors. Appellants' brief states that "There was no agreement between the parties as to what would happen to the stock if it was not sold to employes."

It must be remembered that these Iron Company shareholders became Steel Company shareholders.* The Annual Reports of the Steel Company from 1917 to the time of trial stated that "Capital stock (10,000 shares) [was] held in Treasury, donated to Company for sale to employees, $500,000 . . ." The shareholders understood

---

* Appellees' brief states: "During the period from 1917 to 1930, A. F. Huston was a director and first President and then Chairman of the Board of the defendant."

that, and while the word "donated" is used in the report the fact is that the so-called donation was made in part performance of a term in the agreement.

After 29 years equity will not aid the plaintiffs to recover back the shares in question on the ground that defendant has not complied with a condition which the plaintiffs contend was annexed to the delivery of the shares. Cf. *Beck v. O'Loughlin,* 337 Pa. 416, 11 A. 2d 867; *Barnes & Tucker Company v. Bird Coal Co.,* 334 Pa. 324, 5 A. 2d 146; *Warnick v. Conroy,* 318 Pa. 232, 177 A. 757; *Riley v. Boynton Coal Co.,* 305 Pa. 463, 157 A. 794; *Grambo v. South Side Bank,* 141 Pa. Superior Ct. 176, 14 A. 2d 925.

Decree affirmed, costs to be paid by appellants.