452 A.2d 540

Roger E. BUCHANAN, et al.

v.

CENTURY FEDERAL SAVINGS & LOAN ASSOCIATION,
et al.

Appeal of FEDERAL NATIONAL MORTGAGE
ASSOCIATION.

Superior Court of Pennsylvania.

Argued April 13, 1982.

Filed Nov. 5, 1982.

Judith R. Cohn, Pittsburgh, for appellant.

Michael Malakoff, Pittsburgh, for appellees.

Before HESTER, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

This class action was brought in 1971 by a group of mortgage borrowers challenging the practice of numerous banks and lending institutions of requiring monthly payments of one-twelfth of annual taxes, assessments and fire and casualty insurance premiums, without compensating mortgagors for the use of their money. In 1971 and 1972, preliminary objections for failure to state a cause of action were filed by all defendants except the Federal National

Mortgage Association, (FNMA), the sole appellant in this appeal. In 1973, the trial court sustained these preliminary objections and dismissed the case with respect to all defendants, including FNMA. In *Buchanan v. Brentwood Federal Savings and Loan Association,* 457 Pa. 135, 320 A.2d 117 (1974) (*Buchanan I*), the Supreme Court reversed, holding that the allegations of the complaint were sufficient to withstand preliminary objections and that plaintiffs should be permitted to prove facts sustaining their theories of express trust, constructive trust and implied contract. After remand, FNMA filed preliminary objections challenging plaintiffs' standing and the propriety of a class action and demurring to the complaint on the grounds that, because FNMA is only an assignee of mortgages and makes no mortgage loans directly to borrowers, FNMA could not have entered into a trust relationship, a constructive trust relationship, or an implied contract with the plaintiffs. These preliminary objections were denied in 1975, and no appeal was taken from that order. On November 6, 1975, the trial court entered an order certifying a class and certain subclasses, approving the class litigation notice and establishing procedures for the future conduct of the case. The class in regard to FNMA consists of persons who obtained loans secured by mortgages on property in Allegheny County, having entered into form mortgage agreements prescribed and insured by the Federal Housing Administration and Veterans Administration, which were subsequently sold by the mortgagor lending institutions to FNMA. In December of 1975, plaintiffs concluded a settlement with all defendants except FNMA. However, the Court of Common Pleas refused to approve the settlement. In *Buchanan v. Century Federal Savings & Loan Association,* 259 Pa.Super. 37, 393 A.2d 704 (1978) (*Buchanan II*), this Court held that the lower court had erred, and that the parties' settlement was fair, reasonable and in the best interest of the class.

In June, 1980, the named representatives of the class of plaintiffs asserting claims against FNMA, Roger and Dorothy Buchanan, filed a motion for partial summary judgment on the issue of liability against FNMA. Judge Silvestri

granted appellees' motion, finding that a trust relationship existed between plaintiff class members and FNMA and that FNMA violated its fiduciary duties by comingling and using the tax and insurance premium prepayments for its own benefit. Following the entry of partial summary judgment, Judge Silvestri ordered FNMA to capitalize the escrow payments received by FNMA from members of the class on FHA and VA mortgage loans owned by FNMA which originated between December 7, 1965 and August 10, 1970. This appeal followed. We reverse.

Appellees, the Buchanans, obtained the mortgage which is the basis of their claim against FNMA on May 20, 1969 from the Abbott Mortgage Corporation, which subsequently became the Galbreath Mortgage Company. The note and mortgage were sold to FNMA on June 11, 1969. Galbreath remained as the servicer of the mortgage for FNMA, with the responsibility for collecting all monies due, keeping records and protecting all rights of the mortgagee. The following language exists in the form mortgage executed by appellees, and is representative of the language contained in other mortgages purchased by FNMA.

"That in order to more fully protect the security of this mortgage, the Mortgagor, together with, and in addition to, the monthly payments of principal and interest payable under the terms of the note secured hereby, covenants to pay the Mortgagee, .... the following sums:

(b) A sum ... equal to ... the premiums that will next become due and payable on policies of fire and other hazard insurance covering the premises secured hereby, plus taxes and assessments next due on the premises covered hereby (all as estimated by the Mortgagee) ... such sums to be held by Mortgagee in trust to pay said ... premiums, taxes and special assessments; and

(c) All payments mentioned in the two preceding subsections of this paragraph and all payments to be made under the note secured hereby shall be added together and the aggregate amount thereof shall be paid by the Mortgagor each month in a single payment to be applied by the Mortgagee to the following items in the order set forth:

(I) premium charges under the contract of insurance with the Secretary of Housing and Urban Development, or monthly charge (in lieu of mortgage insurance premium), as the case may be;

(II) ground rents, taxes, special assessments, fire and other hazard insurance premiums;

(III) interest on the note secured hereby; and

(IV) amortization of the principal of said note."

Appellant, FNMA, contends that because the mortgage agreement reflects a debtor-creditor relationship between mortgagor and mortgagee, and not a beneficiary-trustee relationship, the lower court erred in granting summary judgment against FNMA on the issue of liability. In *Buchanan I, supra,* the Supreme Court was deciding whether, admitting all the well-pleaded facts in the complaint and all inferences reasonably deducible from the facts, the complaint stated a cause of action. The Court noted that on remand, appellants (appellees herein) would have to prove all of the elements of a trust. The lower court quoted *Thompson's Will,* 416 Pa. 249, 254–55, 206 A.2d 21, 25 (1965), in setting forth the elements necessary to create a trust; "sufficient words to create a definite subject, and a certain or ascertained object; and to these requisites may be added another, viz, that the terms of the trust should be sufficiently declared, but, as to these terms, 'any words' which indicate with sufficient certainty a purpose to create a trust will be effective in so doing." Lower Court Opinion at 4. The lower court found that each of these requirements was met by the form mortgage agreement. The "definite subject" requirement is created by the language in the mortgage documents requiring monthly payments of portions of insurance premiums and taxes. The "ascertained object" of the trust is indicated by the mortgage documents as the satisfaction of the insurance and tax obligations of the mortgagors. Although the stated purpose of the monthly payments is to protect the security of the mortgage, the lower court found from the facts and circumstances that the words of the mortgage agreement "to be held . . . in trust" strongly

indicate that a trust was contemplated. The court below noted that the Supreme Court in *Buchanan I* had instructed that neither the presence or the absence of the word "trust" is determinative of an intention to create a trust, but felt that since the agreement provided for the transfer of property with directions to the transferee to deal with it for the benefit of another, an intent to create a trust was sufficiently manifested. The court felt that since liability to pay the insurance premiums and taxes remains on the mortgagor, the mortgagor retains the beneficial interest in the funds when they are held by FNMA.

Appellant has cited numerous cases from other jurisdictions which have not found trust relationships from mortgage agreements which raise the same issue as the agreement in this case. *See Brooks v. The Valley National Bank,* 113 Ariz. 169, 548 P.2d 1166 (1976); *Petherbridge v. Prudential Savings and Loan Ass'n.,* 79 Cal.App.3d 509, 145 Cal. Rptr. 87 (1978); *Marsh v. Home Fed. S & L Ass'n.,* 66 Cal.App.3d 674, 136 Cal.Rptr. 180 (1977); *LaThrop v. Bell Federal Savings and Loan Association,* 68 Ill.2d 375, 12 Ill.Dec. 565, 370 N.E.2d 188 (1977), *cert. denied,* 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978); *Zelickman v. Bell Fed. S & L Ass'n.,* 13 Ill.App.3d 578, 301 N.E.2d 47 (1973); *Yudkin v. Avery Fed. S & L Ass'n.,* 507 S.W.2d 689 (Ct.App. Ky.1974); *First Fed. S & L Ass'n of Lincoln v. Board of Equalization of Lancaster County,* 182 Neb. 25, 152 N.W.2d 8 (1967); *Kronisch v. The Howard Savings Institution,* 161 N.J.Super. 592, 392 A.2d 178 (1978); *Surrey Strathmore Corp. v. Dollar Savings Bank of New York,* 36 N.Y.2d 173, 366 N.Y.S.2d 107, 325 N.E.2d 527 (1975); *Tierney v. Whitestone S & L Ass'n.,* 83 Misc.2d 855, 373 N.Y.S.2d 724 (1975); *Cale v. American Nat'l Bank,* 37 Ohio Misc. 56, 66 Ohio Opinions 2d 122 (1973); *Richman v. Security S & L Ass'n.,* 57 Wis.2d 358, 204 N.W.2d 511 (1973). The lower court did not address these decisions, finding that the Pennsylvania Supreme Court in *Buchanan I* had established that a debtor-creditor relationship did not exist:

> "FNMA cites cases from other jurisdictions to illustrate that the relationship involved here is not trustee and

beneficiary but debtor and creditor. However, in *Buchanan* the Supreme Court found that the trial court was incorrect in stating that the relationship established between mortgagors and mortgagees was that of debtor and creditor. The indicia of such a relationship did not exist. The mortgage agreements do not speak of a debt in regard to the monthly payments in question. The Supreme Court recognized that liability for payment of taxes and insurances remained always on the mortgagors. Furthermore, the Supreme Court recognized that the absence of interest paid on the 'escrow monies' indicates that a trustee-beneficiary relationship and not a debtor-creditor relationship was contemplated, because the payment of interest has been held to denote the existence of the latter relationship. *Buchanan*, [457 Pa.] at 149, 150, n. 14 [320 A.2d 117] (citations omitted)." Trial Court Opinion at p. 7.

In further support of its holding that an express trust existed, the court below cited the Restatement (Second) of Trusts, § 12, Comments (g) and (i):

"Comment (i) states that 'where a person deposits money with another as security for the faithful performance of obligations which he owes to the other, it depends upon the manifestation of intention of the parties whether the person receiving the money is a trustee with a security interest on the money or is a debtor. If it is understood that he is to keep the money for the other person and to return it to him when he has performed his obligations, he is a trustee of the money. If, on the other hand, it is understood that he may use the money as his own and pay the amount of it to the other when the latter has performed his obligations, he is a debtor.' Comment (g) lists circumstances helpful in determining the intention of the parties in regard to whether a trust or debt is contemplated. Among these circumstances are:

the presence or absence of an agreement to pay interest on the amount paid; the amount of money paid; the time within which the payee will have to perform; the relative financial situation of the parties; the relation between the

parties; and custom or usage. The following paragraph of the comment is devoted to the significance of the payment of interest on the money paid, and indicates the importance of parties' [sic] agreement in this regard to the question of the type of relationship intended. The crucial factor of the absence of an agreement to pay interest on the monthly payments for insurance and taxes clearly demonstrates that the payee, FNMA or its servicers, is not paying for the right to use the money and is not entitled to use the money for its own purposes." Trial Court Opinion at p. 7, 8.

Although the above-quoted language leads one to the logical conclusion that a trust relationship clearly exists, we find that the court below is mistaken in its reliance on *Buchanan I* and the Restatement (Second) of Trusts, § 12, Comments (g) and (i). In *Buchanan I* the Supreme Court held that the trial court was in error when, on the basis of defendant's preliminary objections, the lower court had held that the mortgage created a debtor-creditor relationship as a matter of law. *Buchanan I, supra,* 457 Pa. at 149–150, 320 A.2d at 125–126. The Supreme Court did not hold that as a matter of law a trust was created by the documents in question. All that the Supreme Court held, as this court noted in *Buchanan II,* was that the plaintiffs were entitled to the opportunity to attempt to prove at trial that a trust, and not a debt, was created and that the terms of the trust entitled plaintiffs to be compensated for the defendants use of the escrow funds. *Buchanan II, supra,* 259 Pa.Super. at 51–52 and 52, n. 17, 393 A.2d at 711–712. In *Buchanan I,* the Supreme Court cited with approval *Carpenter v. Suffolk Franklin Savings Bank,* 362 Mass. 770, 291 N.E.2d 609 (1973) (*Carpenter I*), where the Supreme Judicial Court of Massachusetts held that a case similar to the instant case should not have been dismissed on the basis of preliminary objections because a cause of action in trust had been set forth. However, after a trial on the merits, it was found that neither an express nor constructive trust had been created. This decision was affirmed on appeal. *Carpenter v. Suffolk Franklin Savings Bank,* 370 Mass. 314, 346 N.E.2d 892 (1976)

(*Carpenter II*). *See Buchanan II,* 259 Pa.Super. at 52 n. 17, 393 A.2d at 712 n. 17. Although *Carpenter II* is not controlling precedent in this jurisdiction, its result is illustrative of the point that *Buchanan I* does not mandate the finding of a trust relationship in the case *sub judice.*

In analyzing the Restatement (Second) of Trusts, § 12, the lower court failed to mention Comment (b) which is more nearly on point that Comments (g) or (i). The following two statements from Comment (b) are relevant to the instant case:

" 'If money is deposited in a bank for a special purpose, the bank is not a trustee or bailee of the money *unless it is the clear understanding of the parties* that the money is not to be used for its own purposes.' (Emphasis added). 'Where the deposit is in escrow, that is where the money is to be paid to a third person on the happening of a designated event and in the meantime the depositor has no right to withdraw the money, *it depends upon the manifestation of the intention of the parties whether the bank may use as its own the money deposited or whether the money shall be held in trust.* Such a deposit ordinarily indicates an intention that the bank may use the money as its own, the bank undertaking to pay the third person the amount of the deposit on the happening of the designated event. (Emphasis added).' " *Buchanan II,* 259 Pa.Super. at 51, 52, 393 A.2d at 711.

The lower court found the absence of an agreement to pay interest on the monthly payments, one of five factors listed in Comment (g), as the crucial factor that clearly demonstrates that FNMA is not entitled to use the money for its own purposes. Although the absence of an agreement to pay interest is a significant factor, we do not see such absence as clearly demonstrating a trust relationship. Other than the word "in trust," the form mortgage agreement is silent as to whether or not FNMA or its servicers can use the fund. This Court stated in *Buchanan II,* "certainly at trial, oral or written evidence specifically negating the existence of a trust could be introduced against individual mortgagors or perhaps entire sub-classes." *Buchanan II,* 259

Pa.Super. at 53, 393 A.2d at 712. The relationship between the parties and custom or usage in the trade concerning this type of arrangement are also factors listed in Comment (g), but were not considered by the court below.

 Appellees' contend that appellant has failed to raise any genuine issue of material fact. However, as the lower court correctly stated, "the burden of demonstrating that there is no genuine issue of material fact, in that a party is entitled to judgment as a matter of law, is on the moving party . . . ." Lower Court Opinion at 1, 2. Because *Buchanan I* does not preclude the finding of a debtor-creditor relationship, and because we hold that the absence of an agreement to pay interest does not necessarily mean that a trust relationship was intended, there remains as a genuine issue of material fact whether or not the parties intended to enter into a trust relationship. Accordingly, we reverse the orders of the lower court granting summary judgment and injunctive relief, and remand this case for trial. Jurisdiction is not retained by this Court.

JOHNSON, J., files a dissenting statement.

JOHNSON, Judge, dissenting:

I most respectfully dissent. I would affirm the instant appeal on the opinion of Judge SILVESTRI below.