542 A.2d 117

Roger E. BUCHANAN and Dorothy E.
Buchanan, His Wife, et al.,

v.

CENTURY FEDERAL SAVINGS AND LOAN ASSOCIATION
OF PITTSBURGH, et al.

Appeal of Roger BUCHANAN, on Behalf of
Himself and All Others.

Superior Court of Pennsylvania.

Argued Sept. 28, 1987.

Filed April 27, 1988.

1

Michael P. Malakoff, Pittsburgh, for appellant.

Franklin Poul, Philadelphia, for appellees.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, ROWLEY, OLSZEWSKI, DEL SOLE, KELLY, POPOVICH and JOHNSON, JJ.

JOHNSON, Judge:

This case presents the question of whether a mortgagor's advance payment to a mortgagee of money in escrow to be used to pay taxes and insurance premiums constitutes a trust. On the facts presented in this case, we find that a trust is created.

At the non-jury trial, the parties stipulated to the following facts. Roger and Dorothy Buchanan purchased a two family residential dwelling located on Dawson Street, Pittsburgh, Pennsylvania, which they bought as investment property. In financing the purchase they executed a mort-

gage on May 29, 1969 with Abbott Mortgage Corporation of Pittsburgh (Abbott). This mortgage was insured by the Federal Housing Administration (FHA) and executed on a printed form prepared by the FHA.

The Federal National Mortgage Association (FNMA) purchases mortgages insured by the FHA as well as mortgages guaranteed by the Veterans' Administration (VA). FNMA does not originate mortgages and has no direct contact with any mortgagors. The purchase of mortgages by FNMA is normally pursuant to a selling agreement. The mortgages are serviced by mortgage banking institutions, generally the original mortgagees, in accordance with a standardized servicing agreement. On June 11, 1969 FNMA purchased the mortgage entered into between the Buchanans and Abbott. An assignment of mortgage was executed between Abbott and FNMA. Abbott remained the FNMA servicer of the mortgage. At some point Abbott changed its name to Galbreath Mortgage Company.

In addition to purchasing the Buchanan mortgage FNMA purchased FHA and VA mortgages in the 1960's and 1970's for residential properties located in Pennsylvania. These mortgages were issued on FHA and VA prepared mortgage forms. FHA regulations required that mortgagors, such as the Buchanans, pay, in addition to their monthly payments of principal and interest, an amount equal to $\frac{1}{12}$ of the annual insurance premiums and tax assessments anticipated to be due on the mortgaged property. Such a requirement was also contained in the VA mortgage forms.

On FHA and VA mortgages for properties located in Pennsylvania FNMA has never paid interest or other compensation on the monthly payments of taxes and insurance.

The clause in the Buchanan mortgage which set forth the advance payment of insurance and taxes reads as follows:

THIS INDENTURE IS MADE, however, subject to the following covenants, conditions, and agreements and the Mortgagor covenants and agrees:

1. . . . .

2. That in order more fully to protect the security of this mortgage, the Mortgagor, together with, and in addition to, the monthly payments of principal and interest payable under the terms of the note secured hereby, covenants to pay to the Mortgagee, on the first day of each month until the said note is fully paid, the following sums:

a) . . . .

b) A sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable on policies of fire and other hazard insurance covering the premises secured hereby, plus taxes and assessments next due on the premises covered hereby (all as estimated by the Mortgagee) less all sums already paid therefor divided by the number of months to elapse before one (1) month prior to the date when such ground rents, premiums, taxes and assessments will become delinquent, such sums to be held by Mortgagee in trust to pay said ground rents, premiums, taxes, and special assessments; . . . .

FHA Form No. 2171 m, as revised July, 1966.

The case now before this Court is a class action which was commenced in 1971 by a complaint in equity. The plaintiffs in action are the Buchanans, and other individual mortgage borrowers who represent themselves and others similarly situated (hereinafter reference to the Buchanans shall be understood to include reference to the other plaintiffs, where applicable).

The defendants are FNMA and numerous banking institutions which issued mortgages to the Buchanans and other plaintiffs containing tax and insurance escrow provisions similar to the one set forth above. The Buchanans alleged that the advance payments of tax, insurance and assessments into escrow (hereinafter, advance payments or escrow payments) to the defendants pursuant to the mortgages are monies which defendants receive and hold as trustee for the Buchanans. The Buchanans alleged that in violation of a trustee's fiduciary duties, defendants commingled their

escrow payments and those of other borrowers with the defendants' general funds. As a result of this, the Buchanans allege that defendants earned profits from the use and investment of these escrow payments in the operation of their business. Among other things, the Buchanans sought an accounting for all earnings which defendants derived from the use of these monies and sought to enjoin the future collection of such advance payments. An amended complaint and second amended complaint were filed.

The Court of Common Pleas of Allegheny County dismissed the complaints for failure to state a cause of action. On appeal, the Pennsylvania Supreme Court upheld the dismissal of a cause of action set forth under the Truth in Lending Act but in all other respects reversed the common pleas court and remanded the case. *Buchanan v. Brentwood Federal Savings & Loan Assoc.*, 457 Pa. 135, 320 A.2d 117 (1974) (*Buchanan I*). The supreme court found that appellants pleaded sufficient facts to put at issue the creation of a trust. The court also found that on remand plaintiffs would be allowed the opportunity to prove their alternative theories of constructive trust and breach of implied contract.

On remand, the common pleas court certified the plaintiff class and established subclasses. The plaintiffs agreed to a proposed settlement with all defendants except FNMA. Following hearings the common pleas court disapproved the settlement. On appeal this Court found that the decision to refuse the settlement was manifestly unreasonable. *Buchanan v. Century Federal Savings & Loan Assoc.*, 259 Pa.Super. 37, 393 A.2d 704 (1978) (*Buchanan II*). The Court reversed the lower court and ordered the acceptance of the amended settlement.

In 1980 plaintiffs filed a motion for partial summary judgment against the remaining defendant FNMA. The common pleas court granted the motion finding that a trust relationship existed between plaintiff class members and FNMA. The court held that it was clear that FNMA is a trustee of the advance payments and that FNMA commingled and used the funds for its own benefit, thus breaching

FNMA's fiduciary duties. On appeal this Court, in a three judge panel, reversed. *Buchanan v. Century Federal Savings & Loan Assoc.,* 306 Pa.Super. 253, 452 A.2d 540 (1982) (*Buchanan III*). The court held that the absence of an agreement to pay interest did not necessarily mean that a trust relationship was intended. Accordingly, the court remanded the case for trial as there remained a genuine issue of material fact about whether or not the parties intended to enter a trust relationship. The court noted that *Buchanan I* did not preclude a finding of a debtor-creditor relationship.

On remand the trial court found in favor of FNMA. The court concluded that the Buchanans failed in their burden of proving the creation and existence of a trust between themselves and Abbott. As FNMA was an assignee of Abbott, likewise no trust was established as to them. The court stated that the Buchanans abandoned the claims of constructive trust and implied contract at trial by not presenting any evidence in support of these claims.

The Buchanans, in the instant action, appeal the finding that no trust was established. Following our decision in *Buchanan III* the question which the trial court was to determine, and the question that is before us now, is whether or not the parties intended to enter into a trust relationship.

In *Buchanan III* we granted the Buchanans an opportunity to prove at trial that the parties intended to enter into a trust relationship. We found that summary judgment was an improper vehicle by which to dispose of this issue. Since *Buchanan III* the parties have proceeded to trial and introduced evidence concerning the issue of intent. We have reviewed that evidence, as well as the parties' briefs, the extensive record and numerous prior opinions in this case, along with this Commonwealth's law in' the area. We disagree with the trial court's ruling. We find that the Buchanans sufficiently met their burden of proof and established that the parties intended to enter into a trust relationship. Accordingly, we reverse the trial court's order and remand this case for determination of the damages issue.

In *Buchanan I* our supreme court set forth the law to be applied in determining the issue before us. The court stated:

It is well settled that no particular form of words or conduct is necessary to create a trust. *Provident Trust Co. v. Lukens Steel Co,* 359 Pa. 1, 58 A.2d 23 (1948); *Bair v. Snyder County State Bank,* 314 Pa. 85, 171 A. 274 (1934); Restatement (Second) of Trusts § 24 (1959). Neither the presence nor the absence of the words "trust," "trustee," or "beneficiary" is determinative of an intention to create a trust. *Thompson Will,* 416 Pa. 249, 254–255, 206 A.2d 21, 25 (1965); 1 A. Scott, Law of Trusts § 24 (3d ed. 1967). The question is whether the agreements taken as a whole evidence an intent by appellants "to impose ... upon a transferee of the property equitable duties to deal with the property for the benefit of another person." 1 A. Scott, Law of Trusts § 24, at 192 (3d ed. 1967); see Restatement (Second) of Trusts § 2 (1959). "To determine whether there is a trust we are to look, not at the title given, but at the powers and duties conferred." *Sheets' Estate,* 52 Pa. 257, 266 (1866). See *McClain Estate,* 435 Pa. 408, 411, 257 A.2d 245, 246–247 (1969); *Schuldt v. Reading Trust Co.,* 270 Pa. 360, 363–364, 113 A. 545, 547 (1921).

This Court in *Vosburgh's Estate,* 279 Pa. 329, 123 A. 813 (1924), provided specific guidance for the resolution of the question whether the parties intended to create a trust. There we held that

"[a] trust is a relation between two persons, by virtue of which one of them as trustee holds property for the benefit of the other. The term 'trust' is a very broad and comprehensive one. Every deposit is a trust, except possibly general bank deposits; every person who receives money to be paid to another or to be applied to a particular purpose is a trustee...."

Id., 279 Pa. at 332, 123 A. at 815. Accord, *In re Interborough Consol. Corp.,* 288 F. 334, 347 (2d Çir.), cert. denied, 262 U.S. 752, 43 S.Ct. 700, 67 L.Ed. 1215 (1923); *Andrew v. Union Savings Bank & Trust Co.,* 220 Iowa 712, 715,

263 N.W. 495, 497 (1935); *Carpenter v. Suffolk Franklin Savings Bank,* 362 Mass. 770, 291 N.E.2d 609 (1973). See 1A. Scott, Law of Trusts § 24, at 192 (3d ed. 1967).

*Buchanan I,* 457 Pa. at 143–44, 320 A.2d at 122–23. In concluding its discussion of the express trust issue the court stated:

Finally, the legal effect of the parties' undertaking must be determined by viewing an agreement in its entirety.[14]

14. That no interest was paid on the monthly payments is a circumstance to be considered by the trial court on remand. This Court has stated that the "imposition [of interest on money held by a bank] implies a debtor-creditor and not a trustee-beneficiary relation." *Bair v. Snyder County State Bank,* 314 Pa. 85, 90, 171 A. 274, 275 (1934). The absence of interest being paid on the escrow monies held by mortgage lending institutions may evidence a trustee-beneficiary relationship. See *Barr v. Luckenbill,* 351 Pa. 508, 511, 41 A.2d 627, 628–629 (1945); Restatement (Second) of Trust § 12, Comment g, at 35–36 (1959); 1 A. Scott, Law of Trusts § 12.2 (3d ed. 1967); *Wilbur Trust Co v. Knadler,* 322 Pa. 17, 20, 185 A. 319, 321 (1936); *Pittsburgh National Bank of Commerce v. McMurray,* 98 Pa. 538 (1881).

*Buchanan I,* 457 Pa. at 150, 320 A.2d at 125–26.

 Looking at the mortgage agreement as a whole we believe it evidences an intent that the advance payments are to be held in trust by the mortgagee. The express language used in the form, drafted by FHA, is that these advance sums are "to be held by Mortgagee in trust to pay ground rents, premiums, taxes, and special assessments....". This Court will not ignore this express contractual language. While we are aware that the mere presence of the words "trust" and "trustee" is not determinative of an intention to create a trust, neither are these words irrelevant or to be accorded no weight.

In drafting its mortgage form FHA chose to include the above-quoted language. The Buchanans, who were represented by counsel in the transaction, manifested their agreement with the terms of the mortgage by signing the indenture. There is nothing to suggest that the use of the word "trust" was in any way an accident or oversight. Judging from the completeness and precision of the remainder of the agreement, the inclusion of the word was intentional. What FNMA asks this Court to do is to convenient-

ly ignore this language now, while presumably leaving the other rights and obligations of the agreement intact and enforceable. This we will not do.

Viewing the agreement in its entirety the procedure established by the mortgage is that mortgagor will pay mortgagee the advance sums. The mortgagee will hold these sums to pay the taxes, assessments, premiums, etc., on the subject property. These are the powers and duties explicitly set forth in the agreement. The clear import of these powers and duties is that mortgagee is equitably bound to deal with the advance sums for the benefit of mortgagor, that is, to hold the sums to pay the taxes, etc. Mortgagee is not free to do with the sums as it pleases but is bound to apply them as provided.

Additionally, the agreement does not provide that interest was to be paid on the advance sums. In *Buchanan I, supra*, the supreme court explicitly directed that this fact be considered in determining the issue before us. That no interest was being paid on the escrow monies held by mortgagee may evidence a trustee-beneficiary relationship. *Buchanan I, supra.* In the context of the agreement before this Court we find the absence of interest is one of the facts which evidences a trust relationship. When the Supreme Court discussed the absence of interest factor, it directed attention to comment (g) of the Restatement (Second) of Trusts § 12. That comment states in part:

*Manifestation of intention.* If one person pays money to another, it depends upon the manifested intention of the parties whether a trust or debt is created. If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created.

. . . .

If there is an understanding between the parties that the person to whom money is paid shall pay "interest"

thereon (at a fixed or at the current rate, and not merely such interest as the money, being invested, may earn) the relationship is practically always a debt and not a trust. Interest is paid for the use of the money, and if the payee pays interest he is, in the absence of a definite understanding to the contrary, entitled to use the money for his own purposes. It is theoretically possible, of course, for a trustee to pay "interest" from his own funds, but in the absence of a clear agreement to that effect such an intention would not be found.

Restatement (Second) of Trusts § 12, comment (g) (1959). Here the mortgagee was not obligated to pay interest on the advance sums. Had interest been required, this may have suggested a debt relationship. Considering the language of the agreement and the purpose for the payments the absence of interest is one more factor suggesting a trust relationship.

Viewing the agreement in its entirety we conclude that the mortgage agreement established a trust relationship between mortgagor and mortgagee with respect to the advance tax and insurance payments. The commingling of these funds by FNMA and the use of the funds as working capital to generate income was a violation of the fiduciary duty it owed mortgagor.

We reverse the order of the trial court and remand for a determination of the damages issue.

Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

ROWLEY, J., files a dissenting opinion in which BROSKY, J., joins.

ROWLEY, Judge, dissenting:

I respectfully dissent.

In *Buchanan III*, this Court vacated a summary judgment which was entered by the trial court on the ground that a trust relationship existed between the class members and Federal National Mortgage Association. The panel specifically noted that the trial court's decision to grant

summary judgment was based on several factors including but not limited to: 1) the fact that the words "to be held . . . in trust" in the agreement strongly indicated that a trust was contemplated; 2) that in *Buchanan I* the Supreme Court had determined that although the use of the word "trust" in the mortgage agreement is not determinative of the intent to create a trust, an intent to create a trust was manifested by the provisions of the agreement transferring property with directions that the transferee deal with the property for the benefit of another; and 3) the factors enumerated in Comment (g) of the *Restatement (Second) of Trust,* § 12 with regard to whether or not a trust is contemplated when interest is not paid on money deposited with another as security.

The panel concluded that the trial court misinterpreted *Buchanan I,* and that all the Court held in that case was that the plaintiffs should have the opportunity at trial to present evidence establishing that a trust, and not a debt, was created; that the absence of an agreement to pay interest was not a *crucial* factor, but only a "significant" one; and that there were factors from Comment (g) of the *Restatement (Second) of Trusts,* § 12 which the trial court did not consider, and that the trial court failed to mention Comment (b) of the *Restatement (Second) of Trusts* § 12 which was "more nearly on point." *Buchanan III,* 306 Pa.Super. at 261, 452 A.2d at 544. In vacating the summary judgment and remanding, the panel in *Buchanan III* stated:

> Because *Buchanan I* does not preclude the finding of a debtor-creditor relationship, and because we hold that the absence of an agreement to pay interest does not necessarily mean that a trust relationship was intended, there remains as a genuine issue of material fact whether or not the parties intended to enter into a trust relationship.

*Id.*

It seems apparent from the panel decision in *Buchanan III* that the court held that summary judgment could not be entered because there was a *factual* question concerning the intent of the parties to establish a trust, which question

could not be resolved as a matter of law by applying principles of law to the written mortgage agreement, and it was necessary to remand for the presentation of evidence as to the intent of the parties.

Upon remand, a trial was held following which the court determined that the evidence showed among other things that: 1) it was the standard practice in the industry for mortgagees to require mortgagors to make advance payments for taxes and insurance, but not to compensate the mortgagors for the advance payments; 2) that the mortgagors did not examine the mortgage to determine whether or not they would have to pay monthly sums for taxes and insurance; 3) that the mortgagors had no recollection of the substance of any of their discussions concerning the terms of the mortgage with counsel; and 4) that the mortgagors never discussed the terms of the mortgage with the mortgagee. Thus there was no evidence introduced at the trial which was not already in the record when the motion for summary judgment was filed to indicate that there was an intention to create a trust.

In the present case, by virtue of *Buchanan III*, it is the "law of the case" that whether or not the parties intended to create a trust is a *factual* determination which cannot be ascertained as a matter of law. Because the evidence introduced at trial which was not available for the court's consideration on the motion for summary judgment does not show that the parties intended to create a trust, the adjudication of the trial court *following trial* that there was not a trust relationship, should be affirmed. The majority's determination in the instant appeal that there was a trust relationship is premised exclusively on the terms of the mortgage agreement itself. Since in *Buchanan III* the court held, as the law of the case, that the intention of the parties to establish a trust relationship could *not* be determined as a matter of law from the terms of the mortgage agreement itself, the majority's decision in the present case is contradictory with *Buchanan III*.

Upon remand, and pursuant to the express instructions of the Court in *Buchanan III*, the trial court held a hearing

and thereafter found as a fact that a trust relationship had not been established.

The scope of appellate review in equity cases is quite clear. A chancellor's findings of fact, when approved by a court en banc, have the force and effect of a jury verdict and will not be disturbed on appeal if supported by adequate evidence. [Citation omitted.] However, the chancellor's inferences and conclusions which are drawn from the facts, and the application of the law are always subject to review. [Citations omitted.]

*McDole v. Duquesne Brewing Company of Pittsburgh*, 281 Pa.Super. 78, 83, 421 A.2d 1155, 1158 (1980); quoting from *Philadelphia Fresh Food Terminal Corporation v. M. Levin and Company*, 239 Pa.Super. 287, 292, 361 A.2d 886, 889 (1976). My review of the record of the trial following *Buchanan III* shows that it supports the trial court's *factual* determination that a trust relationship was not established. Therefore, in my opinion it is not appropriate to reverse the factual determination of the trial court. I would affirm the judgment on the trial court's opinion.

BROSKY, J., joins the dissenting opinion by ROWLEY, J.